PLUM v. THE STUDEBAKER BROTHERS' MANUFACTURING COMPANY et al., *Appellants.*

1. **Deed of Trust** : FORECLOSURE. A trustee's sale of land under a trust deed operates as a complete foreclosure and cuts off a junior deed of trust.

2. ——— : ———. Where land which was encumbered by two deeds of trust given by a married woman to secure debts of a third person is sold under the first one, and bought in by the beneficiary therein, and is subsequently conveyed by him to the grantor in the deeds of trust for her separate use, she acquires the land freed from the second deed of trust and can convey a good title.

*Appeal from Johnson Circuit Court.*—HON. N. M. GIVAN, Judge.

Plum v. The Studebaker Bros. Manufacturing Co.

AFFIRMED.

*J. P. Orr* and *John J. Cockrell* for appellants.

When any one holds property subject to a lien incumbrance, trust or charge, and a sale is made to a third party, a *bona-fide* purchaser, without notice, and the lien thus divested, if the title is again acquired by the party in whose hands it was charged, the lien again vests. 2 Pom. Eq. Jur., p. 212, sec. 754 ; 1 Story's Eq. Jur., p. 439, sec. 412 ; 2 Fonbl. Eq. 155 ; Wade on Notice, sec. 53 ; *Tompkins v. Halstead,* 21 Wis. 118 ; *Allison v. Hagar,* 12 Nev. 38 ; *Kezer v. Clifford,* 59 N. H. 208 ; *Woodbury v. Owen,* 59 N. H. 22 ; *Steger v. Mahone,* 24 N. J. Eq. 426 ; *Chaffair v. Packard,* 26 La. Ann. 172.

*John W. Wofford* for respondent.

(1) The two mortgages made by Mrs. Bettes were contracts, and must be construed, as to their legal effect, like other contracts. She was not the debtor of either of the mortgagees, and the relation of debtor and creditor did not exist between them. *Episcopal Church v. Mack,* 17 C. L. J. 372 ; *Thompson v. Heywood,.* 129 Mass. 401 ; *Otter v. Vaux,* 6 DeG. & M. 638. (2) The defendant cannot treat the foreclosure of the first deed of trust as a nullity and attack it collaterally. (3) The defendants having failed to assert their rights against Mrs. Bettes while the title was in her, cannot assert it against Plum, who is an innocent purchaser for value, and takes the land discharged of all the equities that may have existed against her.

BLACK, J.—This is an appeal from a decree of the Johnson circuit court enjoining the defendants from selling the property in question under their deed of trust.

On the twenty-third of April, 1879, H. C. Bettes, and
Amanda, his wife, made a deed of trust to Cope to se-
cure a debt of nine thousand dollars due from W. H.
Bettes & Company to Mary Atherton. This firm was
composed of W. H. and J. J. Bettes, and they and their
wives also joined in the deed which conveyed the ten or
eleven acres of land here in question, owned by Amanda,
and a storehouse and two out lots not owned by her.   In
March, 1881, the same grantors made another deed of
trust on the same property to secure a debt of H. C.
Bettes & Sons, due to the defendants, the Studebaker
Brothers.   This deed, on its face, is made subject to the
prior one, and is the deed under which the sale was
about to be made. Thereafter, and in September, 1881, W.
H. Atherton, who represented the Mary Atherton debt,
purchased the whole of the property at the trustee's
sale under the first deed of trust, for $6,155, paying
for the property in question the sum of two hundred
and fifty dollars.   Subsequently, and in the same month,
Atherton, by warrnty deed, conveyed the ten acres in
question to Amanda Bettes for her sole and separate
use, at the price of $1,156.00.   In October, 1882, Amanda
Bettes sold and conveyed the property to the plaintiff,
Plum, who paid therefor the full value.   These deeds
and deeds of trust were put to record at their respective
dates.

Whatever rights the defendants as second mortga-
gees have, must be determined from the face of the re-
corded deeds ; for there is no evidence in the case which
impeaches the fairness of any of the deeds or sales
through which the plaintiff derives his title.   The claim
of the defendants is, and must be, that when Amanda
Bettes acquired the property back from Atherton, the
purchaser under the first deed of trust, their deed of
trust became a subsisting charge on the property and con-
tinued such as against Plum.   The general rule is stated
in 2 Jones on Mortgages [3 Ed.] section 1887, as follows :

" A mortgageor may purchase at a sale under his own mortgage ; but if he has given a subsequent mortgage upon the same property his purchase will not defeat this, but will operate for the benefit of it in the same way as a discharge or a transfer of the mortgage to himself."

In *Hilton v. Bissell*, 1 Sandf. Ch. 407, B purchased the premises subject to two mortgages, both of which he assumed to pay. The senior mortgagee foreclosed his mortgage, making the junior mortgagee, the mortgageors, and B, defendants. B became the purchaser at the sale for the amount payable on the first mortgage, under the decree of foreclosure. The second mortgagee subsequently sought to foreclose his mortgage, and B set up his purchase under the first foreclosure sale, and claimed to hold the premises discharged of the second mortgage. This plea the court disallowed and said, looking beyond the forms through which B affected the arrangement, it was a payment of the first mortgage, and that he was bound by his covenants to make such payment, and would not be permitted to take advantage of his own wrong ; and that he would be considered the owner of the land subject to the second mortgage. The cases of *Tompkins v. Halstead*, 21 Wis. 118, and *Stiger v. Mahone*, 24 N. J. Eq. 426, are like *Hilton v. Bissell*. In all these cases the purchaser of the equity of redemption had assumed and agreed to pay the mortgages as part of the consideration of the purchase. So in *Otter v. Vaux*, 6 DeG., M. & G., 638, it was the debtor himself, as well as mortgageor, who sought to defeat the second mortgage by a purchase indirectly under a power contained in the first mortgage. In some of these cases, as also in *Thompson v. Heywood*, 129 Mass. 401, there was also an element of fraud on the part of the purchaser under the first mortgages. Taking no special account of this element of fraud in those cases, and which is not found in the case at bar, still the present case is essentially different from them. Here Amanda

Bettes did not undertake to pay the debts secured by either of the deeds of trust. They were the debts and obligations of other persons, and in no event could she be held liable for their payment. She made no such undertaking, express or implied. She being a married woman, and the property being her general estate, she was not liable on any covenants contained in the second deed of trust with respect to the title to the property, if any there had been. But the second deed of trust was in express terms made subject to the Mary Atherton deed of trust. She owed no contract duty to the defendants to pay off the first deed of trust, and we see no reason why she might not have become the purchaser at the trustee's sale under the first deed of trust, and have thus acquired the property discharged of the lien of the second deed of trust. But in this case the transaction stands on still firmer grounds; for, under our system of deeds of trust, the trustee's sale operated as a complete foreclosure, and cut off the second deed of trust as completely as if there had been a decree of foreclosure with all the parties before the court. Atherton got a perfect title as against the defendants, and it was entirely competent for Amanda Bettes to acquire that title, for she owed no duty inconsistent therewith. Plum took the title freed from any lien, legal or equitable, of the second deed of trust.

In *Otter v. Vaux, supra*, it was said if the purchase had been strictly from a third person who had for himself purchased under the power contained in the first mortgage, that might give rise to a difficult question. It was there contended that the purchase by the mortgageor should be treated as a purchase from a stranger, and that contention gave rise to the suggestion. In *Episcopal Church v. Mack*, 17 Cent. L. J. 372, the church owned the lot subject to a mortgage to Bell, and then sold the same to Mack, reserving an easement in

the lot for light and air to their adjoining property. Mack had assumed to pay the mortgage, and sold the property to his wife through a third person, but without any liability on her part to pay the mortgage. Upon the foreclosure of the mortgage she became the purchaser, and it was held she acquired the title divested of the easement to which the property was subject in the hands of the husband. The mortgage sale was made under a statute which provided that the deed should vest in the purchaser, "the same estate (and no other) that would have vested in the mortgagee if the equity of redemption had been foreclosed." The effect thus given to such sale is not materially different from that which is to be accorded to sales under our deeds of trust. We have held, where, by the terms of an ante-nuptial contract, the wife took an estate in fee in her husband's lands in lieu of dower, and after marriage he satisfied a mortgage which existed upon the land at the date of the ante-nuptial contract, with money raised by a new mortgage, that the wife's estate was discharged from the first mortgage. *Anglade v. St. Avit*, 67 Mo. 434.

While these authorities are not decisive of the question here in hand, we think they in a general way support the conclusions before announced in this case. There being no other question here for consideration, the judgment is affirmed. All concur.