L. R. BAIRD, as Receiver of the Williams County State Bank, a Corporation, Appellant-Respondent, v. THOMAS ·CHAMBERLAIN and Armittie Chamberlain, His Wife, Respondents.
ARMITTIE CHAMBERLAIN, Appellant.

(236 N. W. 724.)

Opinion filed May 22, 1931.

*John J. Murphy,* for appellant Baird.
*Burdick & Burk,* for appellant Chamberlain.

BIRDZELL, J. This is a foreclosure action brought by the receiver of the Williams County State Bank to foreclose two mortgages executed by the defendants which were alleged to have belonged to the bank when it passed into receivership. The defendants answered setting up the statute of limitations as to a portion of the indebtedness for which one of the mortgages is alleged to stand as security, an accord and satisfaction as to another portion, and they claim a superior and paramount interest in the property to that of the plaintiff as a mortgagee. They also assert, as to one mortgage, that it was executed without any present consideration and for the purpose of enabling the mortgagee bank to negotiate the same to the War Finance Corporation so that the proceeds might be used to liquidate the indebtedness of the defendant Thomas Chamberlain to the Williams County State Bank; that such representations were made by the president of the latter bank and that they were

false and fraudulent and made for the purpose of obtaining from the defendants additional security for their existing indebtedness. The answer also puts in issue the title of the bank to the notes, pleads the bankruptcy of the defendant Thomas Chamberlain subsequent to the execution of the notes and mortgages and sets up that the property was the homestead of both defendants; also, their acquisition of the property subsequent to the mortgages in question and after the discharge in bankruptcy through repurchase from a first mortgagee who had acquired the property by sheriff's deed on the foreclosure of its first mortgage.

In the trial court a judgment was entered giving a personal judgment against the defendant Armittie Chamberlain for the full amount of the mortgage indebtedness and costs and directing the sale of all her interest in the mortgaged premises. From this judgment both the plaintiff and the defendant Armittie Chamberlain appeal, the plaintiff claiming that the mortgages should be adjudged liens on the real estate as to the interests of both defendants and the defendant claiming that her defenses were established upon the trial and that the action should therefore be in all things dismissed. The essential facts may be stated as follows:

On December 1, 1918, the defendants Thomas Chamberlain and Armittie Chamberlain, husband and wife, executed three notes of $40 each, payable to the Bankers Mortgage Company of Williston, North Dakota. These were commission notes for services in securing a $2,000 loan. They fell due, one on the 1st day of December, 1921, one December 1, 1922, and one December 1, 1923, and were secured by a real estate mortgage executed on the same day. The notes bore an unsigned indorsement without recourse in the name of the payee and were stamped on their face "Collateral to Bankers Mortgage Company" and were in the bank when the receiver took charge. The Bankers Mortgage Company at that time was indebted to the Williams County State Bank in the sum of $2,500 and these notes were a portion of the collateral held as security therefor.

On October 26, 1921, the defendant Thomas Chamberlain executed a chattel mortgage, covering 42 head of cattle, 11 horses, farm machinery and crops, to the Williams County State Bank to secure notes described as follows: One note dated October 26, 1921 for $3,135

due October 1, 1922; one note dated October 26, 1921 for $270 due October 1, 1922; and one note dated October 26, 1921, for $245 due November 15, 1922. These three notes are again described in a short form real estate mortgage dated December 29, 1921, which mortgage was executed by the defendants Thomas Chamberlain and Armittie Chamberlain. The first two of these notes were exhibits in the case and are signed by the above named defendants. They are marked "Renewed 11-22-22" and the renewal notes, also in evidence, are signed by Thomas Chamberlain alone. The real estate mortgage contains this covenant and recital "Mortgagor hereby covenants with mortgagee that mortgagor is now seized in fee simple of said premises, that mortgagee shall enjoy same without lawful disturbance and mortgagor warrants same to mortgagee against every person lawfully claiming same. Subject to first mortgage of $2,000." All these real estate mortgages were recorded, so that there appeared to be a first mortgage of $2,000, a second mortgage securing the $40 commission notes, and a third mortgage securing the notes last above described. The first mortgage was assigned to the Marquette Trust Company of Minneapolis. It was foreclosed and a sheriff's deed issued to the trust company on May 19, 1925. In November, 1923, the defendant Thomas Chamberlain was adjudged a bankrupt and was discharged May 10, 1924. During all these proceedings the Chamberlains were in possession of the land and by deed dated November 27, 1925, the Marquette Trust Company conveyed the premises to "Thomas Chamberlain and Armittie Chamberlain, his wife, and to the survivor of said parties and the heirs and assigns of the survivor, as joint tenants and not as tenants in common."

It seems that during 1923 and succeeding years a number of banks that were creditors of the Williams County State Bank "pooled" their interests as creditors and combined for the purpose of collecting collateral. At that time the First National Bank of Minneapolis held the renewal notes, which were dated in November, 1922, and due in October, 1923, for $3,135, $365, and $100, respectively, representing the indebtedness secured by the chattel mortgage and which purports to be further secured by the short form real estate mortgage. One Drews of Minneapolis was employed by these creditor banks, including the First National Bank of Minneapolis, for the purpose of collecting the collateral, and one Berry was similarly engaged under Drews'

direction. Shortly after the closing of the Williams County State Bank in the fall of 1923, Drews made an attempt to collect the Chamberlain notes, but nothing was paid on them. Chamberlain, however, signified his willingness to surrender the cattle and he claims that he did so under an arrangement whereby he would keep them on the ranch and feed and care for them at a certain rate. Drews disputes that any definite arrangement was made with reference to taking over the cattle and paying for their keep and testifies that Berry had no authority to make any such arrangement. The cattle and horses were later, with Drews' knowledge, sold at Williston for a feed bill and also for taxes. They were bid in by Chamberlain and a year or more later they were sold on the market for approximately $4,700.

In the appeal of the plaintiff it is contended that under the covenants of warranty contained in the mortgages executed by the Chamberlains, the after-acquired title obtained through the mortgagee who foreclosed the first mortgage inured to the benefit of the mortgagee under the subsequent mortgages and that the lien of these subsequent mortgages was in no way affected by the bankruptcy proceedings in which Thomas Chamberlain obtained his discharge. Since the decision of this matter in the trial court this court has passed upon both these questions in the case of Merchants Nat. Bank v. Miller, 59 N. D. 273, 229 N. W. 357. The covenants of warranty in the mortgages in question are in all substantial respects identical with the covenants of warranty considered in the case above cited. While the respondent argues that the expression following the covenant of warranty in the third mortgage "Subject to first mortgage of $2,000" qualifies the warranty and distinguishes the covenant from that contained in the Merchants Nat. Bank Case, supra, we think his contentions are clearly unfounded, for in that case the covenant contained the expression "except incumbrances of record." Concerning such exception this court said (59 N. D. 278; 229 N. W. 359): "While the mortgagor did not warrant the land free from incumbrances, nevertheless he agreed with the plaintiff that he would defend this title to the premises against all lawful claims, and therefore he agreed to defend it against the first mortgage. See Smith v. Gaub, 19 N. D. 337, 123 N. W. 827. The covenant of warranty and to defend the title is not restricted by the exception as to the incumbrances. The fact that a restriction was placed on the warranty

against the incumbrances does not in any way show the parties intended to restrict and qualify the covenant of warranty to defend."

We are of the opinion that a recital in a mortgage that it is subject to a prior mortgage is not properly construed as a qualification of the covenants of warranty which bind the mortgagor to protect the mortgagee against lawful disturbance and against every person lawfully claiming the premises.

Concerning the discharge of Thomas Chamberlain in bankruptcy and his re-acquisition of title through conveyance from the first mortgagee who had acquired a sheriff's deed upon foreclosure, the Merchants National Bank case, supra, is equally conclusive, and the fact that Thomas Chamberlain listed his liability on the notes in question and obtained his discharge as to such indebtedness does not prevent his after-acquired title to the mortgaged premises from inuring to the benefit of the mortgagee. The extent of the holding on that point is indicated by the following expression (59 N. D. 285; 229 N. W. 362):

"Even if by the listing of provable claims under broken covenants he could relieve himself from money judgment thereon, this does not affect his warranty of title so long as he has title either before or after the warranty is broken.

"The Bankruptcy Law does not discharge mortgage liens and, the defendant being estopped from denying he gave this lien, and estopped from showing the lien had been extinguished by a prior foreclosure, and having covenanted 'that he will warrant and defend the title against all lawful claims,' and our statute providing that after-acquired title inures to the benefit of the mortgagee, it is clear Miller could not assert any such defenses against the foreclosure of this mortgage."

Under the principles of this decision it is clear that the appellant's contentions with respect to the inuring of the subsequently acquired title must be upheld.

This brings us to the appeal of Armittie Chamberlain. It is first contended that part of the notes (the $40 notes) are not shown to have belonged to the Williams County State Bank on account of the indorsement being incomplete and on account of the testimony showing that the notes were pledged as collateral to the indebtedness of the Bankers Mortgage Company to the Williams County State Bank and there being no testimony to show that the pledge had been foreclosed.

Since the testimony shows that the notes were pledged as collateral and that the indebtedness for which they were collateral still existed, the pledgee holds them in circumstances which would entitle it to the indorsement of the payee. (Comp. Laws 1913, § 6934; Negotiable Inst. Law, § 49.) And where an instrument is transferred in such circumstances as to make the transferee a lien holder, such lien holder "is deemed a holder for value to the extent of his lien." (Comp. Laws. 1913, § 6912; Negotiable Inst. Law, § 27.) As the evidence shows that the instrument was pledged and transferred to the pledgee by an insufficient indorsement and the indebtedness remained unpaid, it shows that the pledgee had a right to have the indorsement completed and the right to maintain an action upon the instrument and recover, at least to the extent of its interest therein. It is, therefore, immaterial whether the pledge itself was foreclosed.

The statute of limitations was pleaded and it is pointed out on the appeal that as to the $40 note, dated December 1, 1918, and due December 1, 1921, the statute applies. There being no evidence of part payment or of any other circumstances to toll the statute as to such note, this contention appears to be well founded and is sustained. While the six-year statute bars personal judgment on the note, the ten-year limitation for the foreclosure of the mortgage (Comp. Laws 1913, § 7374) had not expired. It may, therefore, be foreclosed even as to a portion of the indebtedness barred by the statute. Satterlund v. Beal, 12 N. D. 122, 95 N. W. 518.

It is next contended that the notes secured by the short form real estate mortgage (the second cause of action) are shown to have been discharged through accord and satisfaction; that such notes were shown to have been secured by chattel mortgage and that Thomas Chamberlain turned over the stock to Drews who was collecting for the "pool" and Drews, through his neglect, suffered loss of title through failure to discharge the plaintiff's lien for pasturing and feeding.

The burden of proof to establish the accord and satisfaction was upon the defendants. Chamberlain testified, in substance, that he surrendered the live stock to Drews and had an arrangement with him whereby he (Chamberlain) was to keep the stock upon the ranch and receive a stated compensation for feeding them. Drews denies that any such arrangement was made, but corroborates Chamberlain to the

extent of indicating that Chamberlain was willing to turn over the stock. The trial court has found that nothing was paid on these notes, which is a finding, in effect, that the defendants have not sustained the burden of proof. The general circumstances, as well as the testimony of Drews, tend to support such finding. Furthermore, the defendants have received the full benefits of the ownership of the livestock, since they subsequently sold a portion of it for $4,700.

As to the contentions of the defendant and appellant, Armittie Chamberlain, that the short form mortgage was given without any present consideration and only to enable the bank to negotiate a loan from the War Finance Corporation and not as additional security for the notes already secured by chattel mortgage, we think little need be said. It will be noted that this mortgage at the time it was given was a third mortgage and, while it may be true that the bank might have hoped to be able to use it to secure a War Finance loan, it hardly appears probable that a third mortgage would have been considered efficacious for that purpose. The mortgage ran to the bank and it rather appears that it was given as additional security to an indebtedness that was apparently not well secured at the time.

It follows from what has been said that the judgment from which both parties have appealed should be modified as follows: In so far as it is a personal judgment against Armittie Chamberlain, it should be reduced by the amount of the note and interest against which the statute of limitations has run and the lien should be extended to all the right, title and interest of Thomas Chamberlain and Armittie Chamberlain in the property in question. As thus modified, the judgment is affirmed, neither party to recover costs on the appeal.

CHRISTIANSON, Ch. J., and NUESSLE, BURR, and BURKE, JJ., concur.