GERTRUDE M. KOSSOFF, Appellant, *v.* MORRIS WALD and Others, Respondents.

First Department, December 13, 1935.

*Jacob M. Zinaman,* for the appellant.

*Thomas L. Walsh* of counsel [*Norwood & Walsh,* attorneys, for Carlisle Norwood; and *Irving S. Finkston,* attorney, for Morris Wald and Abraham Greenberg], for the respondents.

UNTERMYER, J. This court has previously held (241 App. Div. 483) that the complaint states a sufficient cause of action in equity. Upon the trial at Special Term judgment was rendered for the defendants on the ground that no conspiracy or collusion on their part to eliminate the plaintiff's second mortgage had been shown. The only question upon this appeal is whether the facts sustain this conclusion of the Special Term.

In May, 1930, the plaintiff became the holder of a second mortgage for $6,500 on premises owned by Silberman Realty Co., Inc., in the borough of Bronx, subordinate to a first mortgage for $46,500 held by the defendant Norwood. Thereafter the defendant Greenberg became the owner of the property subject to these two mortgages, payment of which, however, he did not assume. By installment payments he reduced the principal of plaintiff's second mortgage to $4,250 and paid the interest thereon to November 20, 1932.

Interest amounting to $697.50 became due on the first mortgage on April 1, 1933. Greenberg tendered part payment only, which Norwood refused to accept stating that additional taxes would

become due on May 1, 1933, and suggesting that Greenberg and his counsel confer with Norwood's counsel for the purpose of reaching some definite understanding not later than April 18, 1933. No satisfactory arrangement was, however, made within the time specified. Instead Greenberg asked Norwood for an extension of time and a reduction in the rate of interest, which was refused. Conferences ensued, in the course of which Greenberg stated to Norwood that he could not continue to carry the property unless the second mortgage were eliminated. Eventually it was verbally agreed that Norwood, as first mortgagee, should institute foreclosure proceedings upon the understanding that if he should purchase the property at foreclosure sale he would resell it to Greenberg at a price, to be paid by the execution of a new purchase-money mortgage, sufficient to cover the amount due on the first mortgage together with the expenses of foreclosure, the accumulated interest, taxes and water rates to the time of resale, to be paid in cash.

The foreclosure action was commenced on May 2, 1933. On May third the earlier verbal agreement was reduced to writing. Previously, Norwood testified, he had agreed that, after foreclosure, he would transfer the property to Greenberg and that he (Norwood) " would take back a purchase money mortgage for everything above the taxes and interest and expenses of foreclosure." Greenberg's attorney, also called as a witness by the plaintiff, testified that on April 28, 1933, it had been arranged that after foreclosure Greenberg should repurchase the property from Norwood upon the terms subsequently incorporated in the written contract of May 3, 1933. This likewise is confirmed by the recital in that contract to the effect that " the party of the first part [Norwood].is now about to commence foreclosure proceedings on the said property," although the foreclosure action had already been commenced. Although the contract of May third was made by Norwood with Claire Weiner, Greenberg's daughter, as party of the second part, the conclusion is irresistible that she was acting throughout as her father's representative. This is established beyond the possibility of contradiction by facts to which Greenberg's attorney testified. Norwood also conceded that " I understood that."

The contract of May third, after reciting that Norwood is entitled to foreclose his mortgage on the premises, provides that he " agrees to advance all the necessary expenses involved in the said foreclosure proceeding." It then provides that if Norwood shall be the purchaser at foreclosure he will sell to Claire Weiner, and Claire Weiner will purchase the property for the amount of Norwood's mortgage of $46,500 " plus all disbursements, costs, allowances and expenses

involved in the foreclosure," exclusive of attorney's fees. These disbursements, costs, allowances and expenses are to be added to the amount of the then existing mortgage, and, together with payment in cash of interest in default, taxes, unpaid water rates, mortgage tax, recording fees and stamps, constitute the consideration for the sale. It is not pretended that the plaintiff had knowledge of the agreement under which the owner and the holder of the first mortage were acting. On the contrary, the court expressly found that neither Greenberg nor his attorney ever stated to the plaintiff that they intended to wipe out her mortgage by these means.

Throughout the foreclosure no receiver was appointed nor was any assignment of rents made. Greenberg remained in possession of the premises and collected the rents precisely as before. When the premises were sold under the judgment of foreclosure Norwood was the purchaser. Promptly thereupon he assigned his bid at auction, and later transferred the title, to one Morris Wald, a relative of Greenberg, who concededly holds the title for him. At the time of the transfer a new mortgage was executed by Wald to Norwood in accordance with the provisions of the contract of May 3, 1933, and other payments made in cash. Greenberg is now, as before, the owner of the property and Norwood, as before, holds the mortgage thereon. Only the plaintiff's second mortgage has been extinguished if the conclusion of the Special Term is correct.

The only purpose of the foreclosure and sale was the elimination of the plaintiff's mortgage while preserving to Greenberg his subordinate interest in the property. There could have been no other purpose, because after the foreclosure Norwood and Greenberg occupied in every other respect the same position as before. Under the agreement of May third Greenberg never parted with real ownership, since Norwood acquired the title merely for the purpose of reconveyance to him. Similarly, Norwood never relinquished his first mortgage, since that mortgage was extinguished only to be revived when the property was reconveyed. The legal effect of the transaction was that Greenberg sold the premises to himself, even though this was accomplished by means of the form of a judicial sale. So far as Norwood and Greenberg were concerned there was no sale, for Greenberg remained the equitable owner from the beginning to the end, Norwood merely acting for him in the acquisition of the property. Although upon the record these parties appeared as plaintiff and defendant, they were in fact united in interest, conducting the proceeding not as adversaries but as coadjutors. (Compare *Mendenhall* v. *Hall*, 134 U. S. 559; *Fleischer* v. *Terker*, 259 N. Y. 60.) In principle, the situation was the same

as if Greenberg had purchased a superior incumbrance such as Norwood's mortgage or a tax lien by the foreclosure of which he had then proceeded to acquire the property for himself. That he could not have done.

The principle was applied in *Otter* v. *Lord Vaux* (6 DeGex, M. & G. 642), where it was said by Lord CRANWORTH to be incontrovertible that a "mortgagor cannot set up against his own incumbrancer any other incumbrance created by himself." Therefore, it was held, the interest of a second mortgagee could not be defeated by the foreclosure of a first mortgage which had been acquired by the mortgagor. To the same effect is *Duer* v. *Jaeger* (113 Misc. 743). The controlling equity is one which it is not easy to classify. It finds frequent application, however, in cases where the enforcement of a tax lien has been refused or rights thereunder limited when it was acquired by an owner for the purpose of cutting off incumbrances. (*Oliphant* v. *Burns*, 146 N. Y. 218; *Pines* v. *Novick, No. 2*, 168 App. Div. 155; *Waring* v. *National Savings & Trust Co.*, 138 Md. 367; 114 A. 57; *Boyd* v. *Jensen*, 122 Me. 31; 118 A. 718; *Jordan* v. *Sayre*, 29 Fla. 100; 10 So. 823; *Cooper* v. *Jackson*, 99 Ind. 566; *American Baptist Missionary Union* v. *Hastings*, 67 Minn. 303; 69 N. W. 1078; *Ryan* v. *Martin*, 103 N. C. 282; 9 S. E. 197; 2 Jones Mortgages [8th ed.], § 841, citing many authorities.) Sometimes it has been said that because "the land is a common fund" there is created a relation which renders it inequitable for a junior interest to acquire a superior title in order to destroy the claims of prior mortgagees. (*Fair* v. *Brown*, 40 Iowa, 209; *Carpenter* v. *Carpenter*, 131 N. Y. 101.) The relation of the parties towards one another arising out of their interest in that common fund as against the holder of a superior lien is held to be sufficiently fiduciary to prevent the acquisition and use by the owner of a title "by which the entire common interest would be swept away." (*Woodbury* v. *Swan*, 59 N. H. 22. Compare, also, *Knolls* v. *Barnhart*, 71 N. Y. 474, and *Thayer* v. *Leggett*, 229 id. 152.) Again, it is said that there is a duty upon the owner which is engendered by "necessity and interest" (*Middletown Savings Bank* v. *Bacharach*, 46 Conn. 513) to pay such charges, even where there is no legal obligation upon the owner to do so, which precludes him from availing himself of a foreclosure resulting from his own non-performance to acquire rights antagonistic to incumbrancers, for whose benefit the duty was to be performed. Consequently it has been held that even the holder of a second mortgage under no obligation to pay taxes, who acquires a tax title for the protection of his own mortgage, may not assert that title to defeat a prior lien. (COOLEY, J., in *Connecticut Mutual Life Ins. Co.* v. *Bulte*, 45 Mich.

113; 7 N. W. 707; *Renshaw* v. *Stafford,* 30 La. Ann. 853; *Fair* v. *Brown, supra.)*

Whatever may be the underlying principle, it is manifest that the relation of the parties to the property is such that a mortgagee is justified in relying on the owner, who is in possession of the premises and collecting the rents, to satisfy those charges upon which the interest of both depends. That expectation is almost certain to be defeated if the owner may acquire hostile and inconsistent rights for the purpose of destroying the common property. (*Bennett* v. *Austin,* 81 N. Y. 309, 333; *Van Epps* v. *Van Epps,* 9 Paige, 237.) The owner would be placed under direct temptation to default in the payment of taxes, or in the payment of interest on a prior mortgage, in order to wipe out intervening rights under such an agreement as existed here and that temptation would continue even after the institution of foreclosure, as the case at hand abundantly proves. Here the record does not indicate that any attempt was made by Greenberg after the foreclosure action was begun to pay the interest on the first mortgage or the taxes which were in default. In view of his agreement with the first mortgagee, it would be strange indeed if he had done so. But immediately after the property had been sold at foreclosure and the plaintiff was thought to be divested of her interest, he found it possible to pay these accumulated charges in full.

Such being the nature of the relationship of the parties it is no answer to say that any outsider could with propriety have made the contract with the holder of the first mortgage which the owner might not make, or that the plaintiff, as a party, might have protected her interest against the consequences of the owner's inequitable conduct by interposing whatever defenses were available in the foreclosure action and by bidding at the sale. Nor is it any answer that Norwood, not acting pursuant to any agreement with Greenberg, might have foreclosed his mortgage and thereafter transferred the title to Greenberg upon whatever terms he saw fit. (*Huzzey* v. *Heffernan,* 143 Mass. 232; 9 N. E. 570; *Rauch* v. *Dech,* 116 Penn. St. 157; 9 A. 180.) The invalidity here proceeds from the nature of the contract under which Greenberg at all times retained an interest in the property. (*Louisville Trust Co.* v. *Louisville, etc., R. Co.,* 174 U. S. 674; *Northern Pacific R. Co.* v. *Boyd,* 228 id. 482.)

It is said, however, that the plaintiff's conduct has been inequitable to a degree which precludes her from seeking the interposition of a court of equity. That conduct consists in her refusal to extend her mortgage or to pay Greenberg $700 for a deed to the property. I fail to understand upon what theory it can be held that the

plaintiff's unwillingness to forego rights which concededly she was entitled to enforce or to purchase Greenberg's interest at an excessive price, can be characterized as inequitable. Indeed, the very facts upon which the defendants rely in justification of their joint attempt to eliminate the second mortgagee serve merely to disclose the motive and to demonstrate the purpose of their secret understanding. If that written understanding does not constitute proof conclusive of a combination between the owner and the first mortgagee to wipe out the plaintiff's interest while preserving the owner's subordinate rights, then such a combination can never be susceptible of proof.

We have not considered, and do not decide, whether the plaintiff's proper remedy was by motion in the original action rather than by a plenary suit, because that question is not suggested by the respondents on this appeal and was not raised in the court below.

The judgment should be reversed, with costs, and judgment directed in favor of the plaintiff reinstating her mortgage to the extent of $4,250, with interest from November 20, 1932, as a second mortgage lien against the premises, subject only to a first mortgage of the defendant Norwood in the sum of $46,500 and any unpaid interest thereon, with costs.

O'MALLEY and TOWNLEY, JJ., concur; MARTIN, P. J., and GLENNON, J., dissent and vote for affirmance.

GLENNON, J. (dissenting). A careful examination of the evidence convinces me that no inference can be tortured from the actual proof in this case to support the theory that the defendant Norwood entered into a conspiracy with his codefendant, Greenberg, to deprive the plaintiff of her mortgage lien.

The property in suit is located at No. 941 Rogers place, in the borough of the Bronx. The defendant Carlisle Norwood, a retired member of the bar, eighty-nine years of age, held a first mortgage on it in the sum of $46,500. In 1930, Silberman Realty Co., Inc., gave plaintiff its bond for $6,500 and a second mortgage covering the property as security for its payment. How much money the plaintiff, Kossoff, actually advanced to the Silberman Realty Co., Inc., at the time of the delivery of its bond and mortgage does not appear.

Some time thereafter — the date is not fixed — Greenberg purchased the property subject to the mortgages for the sum of $10,000. He paid thereafter to the plaintiff on account of the second mortgage the sum of $2,250 in installments, thereby reducing the face amount thereof to $4,250. It is fair to assume that, when he became the

owner, the returns from the property were sufficient to pay all the carrying charges.

Later, the period of depression in real estate ensued. An open public bath was built next to the premises, causing a loss of tenants and a falling off of the rents. About that time Greenberg, the father of a large family, lost his business and apparently was without funds. Plaintiff pressed him to make payments of installments and interest, which he was unable to do, and threatened to foreclose her mortgage. Greenberg offered to deliver a deed to her for the sum of $700, an amount about sufficient to cover the costs of foreclosure, but she refused to accept. Through her attorney, the plaintiff countered with a proposition for a delivery of the deed without any payment, although it does not appear that Greenberg was a party to the bond which had been delivered to her by the Silberman Realty Co., Inc.

On January 1, 1933, the water rates became due and payable. On April first interest on the first mortgage amounting to $697.50 became due. On April sixth Greenberg tendered to the defendant Norwood a check in the sum of $300 in part payment of the interest. This was not Greenberg's first default. He was late in making payments of interest due on January first of that year. Norwood, however, accepted installment payments during January and February. This time he returned the check assigning as a reason therefor that the real estate taxes would become due on May first following and that he did not wish to waive any of his rights. On April twenty-first the attorneys for defendant Norwood ordered a foreclosure search which was received about April twenty-seventh from one of the title companies.

During the latter part of April the attorney who represented the plaintiff, together with the defendant Greenberg, visited the defendant Norwood, in order to try to secure a reduction of the interest on the first mortgage from six to four and one-half or five per cent, although at the same time the plaintiff was insisting that the installments on her mortgage, and the interest thereon, should be paid in full. Her request was naturally denied. On April twenty-sixth Mrs. Claire Weiner, a daughter of Greenberg, retained one Irving S. Finkston as attorney. The latter, without success, first tried to obtain, from the plaintiff's attorney, an extension of time of one year within which to pay the interest on the second mortgage. Thereafter, Finkston, who fixed the date as about April twenty-eighth, visited the defendant Norwood, and submitted a proposition to him that in case he, as first mortgagee, should become the purchaser of the property in the foreclosure action which was about to be commenced, he would consent to sell the property to Greenberg

or his nominee. Mr. Norwood, sympathizing with the plight of the defendant Greenberg, and not wishing to be burdened with the care of the property at his advanced age, agreed that in the event he had to purchase the property to protect his investment at the public sale, he would assign his bid to Greenberg or his nominee upon the conditions outlined in the written agreement which was entered into on May third.

The action to foreclose the mortgage was instituted on May second. Although, according to the testimony of Jacob M. Zinaman, the attorney for the plaintiff, he was informed by Messrs. Finkston and Greenberg in the course of the discussion that "unless we took a nominal sum, the amount then mentioned was $400 in full payment of the mortgage, they would arrange to have the first mortgage foreclosed and wipe out the second mortgage," still, no answer was interposed by his client in the foreclosure action to forestall any such attempt. While the trial court did not place any credence upon this testimony with reference to the offer of $400, it is fair to say if any such threats were made, that this plaintiff would have been in a position to have raised the point as a defendant in the foreclosure action instead of waiting until after it went to final judgment.

It is not contended that Norwood was in any way related to Greenberg. Their acquaintanceship apparently grew out of the fact that Norwood held a first mortgage on Greenberg's property. The loan, as well as that of plaintiff's, was made to the Silberman Realty Co., Inc., and not to Greenberg. The latter was well nigh penniless and the income from the property was insufficient to satisfy plaintiff's demands that payments of installments and interest should be met in full. Norwood had a legal right to protect his investment. He did nothing either before or at the foreclosure sale which prevented prospective buyers from making fair bids. This plaintiff could have purchased the property at the sale and protected her investment. If there was a surplus, by virtue of her mortgage, she would have been entitled to it, at least to the extent of her lien. The foreclosure sale was brought about solely by reason of the conduct of this plaintiff in refusing to grant an extension of time to Greenberg. She was perfectly willing to accept a deed from Greenberg without payment although she knew that by so doing she would deprive him of all he had remaining of his investment.

The legal principles gleaned from the authorities which are referred to in the prevailing opinion are not applicable to the facts and circumstances which are presented in this case. Thus in the case of *Otter* v. *Lord Vaux* (6 DeGex, M. & G. 642), we find the

sound legal principle that a " mortgagor cannot set up against his own incumbrancer any other incumbrance created by himself." Here, however, the second mortgage was not created by Greenberg. The property was burdened with it when it was purchased by him. In the English case the second mortgage was the direct obligation of the owner. He created it, and the court refused to allow him to destroy it.

The cases dealing with tax liens are also distinguishable. The courts there have adopted the sound policy of preventing owners and mortgagees from foreclosing a superior lien created solely by law for the purpose of cutting off the rights of other parties in interest. By way of illustration it might not be amiss to quote from the case of *Connecticut Mutual Life Ins. Co.* v. *Bulte* (45 Mich. 113; 7 N. W. 707), cited in the prevailing opinion, in which Judge COOLEY said: " It certainly cannot be said that the second mortgagee owes any duty to the first mortgagee to protect his lien as against tax sales. Neither on the other hand does the first mortgagee owe any such duty to the second mortgagee, or to the owner. To the State each one of the three may be said to owe the duty to pay the taxes; and the State will sell the interest of all if none of the three shall pay. As between themselves, the primary duty is upon the mortgagor; but if he makes default, either of the mortgagees may pay, and one of the two must do so or the land will be sold and his lien extinguished. But in such cases, where each has the same right, payment by one is allowed to increase the amount of his incumbrance; for in no other way could he have security for its repayment by the mortgagor, who ought to protect the security he has given. When therefore each mortgagee has the same interest in making payment of the tax, and the same right to do so, and the same means of compelling repayment, it may well be held that a purchase by one shall not be suffered to cut off the right of the other, because it is based as much upon his own default as upon that of a party whose lien he seeks to extinguish. It is as just and as politic here as it is in the case of tenants in common, to hold that the purchase is only a payment of the tax."

Furthermore, the two cases in the Supreme Court of the United States (*Louisville Trust Co.* v. *Louisville, etc., R. Co.*, 174 U. S. 674; *Northern Pacific R. Co.* v. *Boyd*, 228 id. 482), also cited by the majority, deal with the foreclosure of mortgages covering extensive railroad properties and, consequently, are not applicable to the facts and circumstances of this case. The following quotation from the opinion of Mr. Justice BREWER in *Louisville Trust Co.* v. *Louisville, etc., R. Co.* (*supra*) will suffice to indicate the views of the court: " We have held in a series of cases that the peculiar character and

conditions of railroad property not only justify but compel a court entertaining foreclosure proceedings to give to certain limited unsecured claims a priority over the debts secured by the mortgage. It is needless to refer to the many cases in which this doctrine has been affirmed. It may be, and has often been said, that this ruling implies somewhat of a departure from the apparent priority of right secured by a contract obligation duly made and duly recorded, and yet this court, recognizing that a railroad is not simply private property, but also an instrument of public service, has ruled that the character of its business, and the public obligations which it assumes, justify a limited displacement of contract and recorded liens in behalf of temporary and unsecured creditors. These conclusions, while they to a certain extent ignored the positive promises of contract and recorded obligations, were enforced in obedience to equitable and public considerations. We refer to these matters not for the sake of reviewing those decisions, but to note the fact that foreclosure proceedings of mortgages covering extensive railroad properties are not necessarily conducted with the limitations that attend the foreclosures of ordinary real estate mortgages.''

It might be well to note that the defendant Norwood fixed the rate of interest in the new mortgage at the sum of five per cent for the first year, and, in addition thereto, that he did not exact any payment from his codefendant, Greenberg, for attorney's fees. On the closing Greenberg was actually short the sum of $682, which was due as interest on the original loan, and it became necessary to include it in the amount of the new mortgage. The net result of the transaction, in so far as the defendant Norwood is concerned, was that it actually cost him a considerable sum of money in order to protect his original investment. By no stretch of the imagination can any one say that Norwood was guilty of a dishonest act. In his desire to be fair he has been met with a charge that he entered into a conspiracy with Greenberg to defraud this plaintiff with whom he had not the remotest relationship. The facts and circumstances in this case do not sustain the charge.

The situation here presented was brought about by the unreasonable demands on the part of this plaintiff in a period of widespread depression which had a very bad effect upon the rental value of the property which is the subject of this litigation. There was no conspiracy, collusion or bad faith on the part of the defendants Norwood and Greenberg.

Under the rule which the majority of the court is about to apply, the plaintiff, who seeks equitable relief, will have her mortgage reinstated in the face amount thereof, less payments actually made,

although there is not a scintilla of evidence in the record to indicate the actual outlay made by her in procuring it.

The judgment entered at Special Term should be affirmed in all respects, with costs and disbursements.

MARTIN, P. J., concurs.

Judgment reversed, with costs, and judgment directed in favor of the plaintiff reinstating her mortgage to the extent of $4,250, with interest from November 20, 1932, as a second mortgage lien against the premises, subject only to a first mortgage of the defendant Norwood in the sum of $46,500 and any unpaid interest thereon, with costs. Settle order on notice reversing findings inconsistent with this determination, and containing such new findings of fact proved upon the trial as are necessary to sustain the judgment hereby awarded.