HENRY H. GREENE, Appellant, v. B. SPITZER, A. M. MAGIDSON, S. A. CUNNINGHAM and HOME OWNERS' LOAN CORPORATION.—123 S. S. (2d) 57.

Division Two, December 20, 1938.

*H. A. & C. R. Hamilton* for appellant.

*Rassieur, Long & Yawitz* for B. Spitzer and A. M. Magidson.

TIPTON, J.—In the Circuit Court of the City of St. Louis, the appellant filed his petition seeking to enjoin respondent B. Spitzer as trustee and respondent A. M. Magidson as owner of a note secured by a second deed of trust on real property located at 3312 and 3314 Franklin Avenue in the city of St. Louis, from foreclosing that deed of trust, and asked the court to determine the title, rights and interests between the appellant, the above respondents, and the defendants S. A. Cunningham and the Home Owners' Loan Corporation (which, throughout this opinion, will be referred to as HOLC). The

HOLC also asked that the court ascertain and determine the title, estate and interest of these parties. The court entered a judgment, decreeing the HOLC's deed of trust to be a first lien upon the property, and A. M. Magidson's deed of trust to be an existing second lien. From this judgment, the appellant has duly appealed.

The parties stipulated as to certain facts which briefly summarized are as follows: That the Weber, or first, deed of trust was executed in 1923; that the appellant and Fannie E. Greene, his wife, were deeded this property in 1925 ''subject to encumbrances of $9,000.00; grantees do not assume or agree to pay said encumbrance;'' that while appellant and his wife owned this property they executed the Magidson deed of trust, dated May 17, 1929, securing a note in the sum of $4300; that on December 30, 1931, the first deed of trust was foreclosed and A. Evan Hughes received a trustee's deed of that date; that on that date Hughes executed a deed of trust to secure a note of $3500 (which was the amount then due on the Weber loan, not including interest, taxes and expenses of foreclosure); that on the same date Hughes conveyed the property to the appellant by a warranty deed, which deed was recorded June 5, 1934; that the appellant executed the HOLC loan May 11, 1934, which also was recorded June 5, 1934; that Fannie E. Greene, the wife of the appellant, died in July, 1931; and that the Magidson, or the second, deed of trust was being foreclosed at the time the petition was filed.

The further facts developed by the testimony were as follows: That during 1931 the first deed of trust became in default, interest and taxes had not been paid for several years; that the Julius Haller Realty Company was the agent for the holder of the note secured by this deed of trust and this company handled the foreclosure; that the holder of the note did not desire to acquire title to this property so it was agreed that this company would bid in the property if necessary to protect the owner of the note, and the owner would take another first deed of trust for $3500, then the company would try to dispose of the property; that at the foreclosure sale held on December 30, 1931, the property was bid in by A. Evan Hughes, one of the company's attorneys, who executed the $3500 deed of trust on that date; that he also executed a blank warranty deed of trust which was delivered to the company; that on the date of the foreclosure sale Magidson gave notice of redemption but did not perfect the same; that the appellant has been in possession of the property since the foreclosure sale; that negotiations for the repurchase of the property by the appellant, commenced shortly after the foreclosure sale, were carried on by the company, the appellant and respondent Magidson, which terminated in a written contract dated April 9, 1932; that by the terms of the contract the property was to

be conveyed to appellant, subject to the first deed of trust, when the appellant paid up the interest that had accrued, the taxes, cost of the foreclosure and one and one-half per cent commission to the company; that Magidson's second deed of trust was then to be released; that the payments were to be $70 upon the signing of the contract and at least $50 per month thereafter, and in the event of a default in the payments, then the previous payments were to be forfeited and to apply as rent for the use of the premises; that this contract was witnessed by Magidson; that the last payment made under this contract was December, 1932; that in July, 1933, the appellant made an application to the HOLC for a loan and it agreed to lend him $4356; that the then first deed of trust executed by Hughes was released and a new deed of trust for that amount executed to the HOLC; that after paying the delinquent taxes, there was still $228.45 less than the amount due on the original first deed of trust, but the holder of the note agreed to forego this sum and surrender the first deed of trust; that the officer of the HOLC raised a question as to whether the second deed of trust owned by Magidson revived when the property was conveyed to the appellant; that an effort was made to obtain a release from Magidson; that he offered to release this deed, if he received $400 in bonds from the holder of the first deed of trust and a note of $350 executed by the appellant; that Magidson testified that his offer was accepted but we believe this is against the weight of the evidence, and believe instead that the counter offer of only $300 in bonds to be given was made; that the appellant did execute the note for $350, payable at the rate of $15 per month, or to be handled leniently over a period of years, and did make one payment of $15 on the note; that the appellant testified that he did not want to go through with this deal unless he had to do so; that after a considerable delay, the HOLC official decided to make the loan without the second deed of trust's being released, and this in spite of the fact that the HOLC official had promised Magidson this would not be done; that on May 11, 1934, the name of the appellant was inserted in the blank warranty deed executed by Hughes, and on that date the appellant executed a deed of trust to secure a loan from the HOLC in the sum of $4356; that both deeds were recorded June 5, 1934; that the HOLC bonds were not turned over to the holder of the note secured by the Hughes loan until the following September; and that Magidson, still claiming his former second deed of trust revived, started to foreclose it as a first lien, but the sale was restrained by an order of the circuit court. Other pertinent facts will be stated in the course of this opinion.

The ultimate question for our determination is: Did the second deed of trust held by respondent Magidson revive when the

property was again deeded to the appellant after the foreclosure of the first deed of trust? Before this question can be discussed, it is necessary to dispose of two points raised by the respondents.

First, the respondents contend that, since the appellant's petition pleads that the second deed of trust is null and void by reason of the forecloure of a prior deed of trust, then the threatened foreclosure of the second deed of trust could not create a cloud upon the appellant's title, and hence does not state a cause of action for a court of equity. We believe the respondents have misconceived the appellant's petition. It is true in his petition that he asks that the threatened foreclosure be enjoined, but he also asks the court to "ascertain and determine the title, estate and interest of the parties, plaintiff and defendants, respectively, in and to the real estate herein described, and define and adjudge by its judgment and decree the title, estate, interest and claim of the parties severally in and to said real estate." The answer of the HOLC also asks that the court determine "the title, estate, interest and claim of the parties severally in and to said real estate." So we have a suit in equity to determine title to real estate, based on Section 1520, Revised Statutes 1929. It is a suit in equity because it seeks a temporary injunction to preserve the *status quo* until the matters involved can be determined by a final decree. We overrule this contention of respondents.

■ Respondents next contend the foreclosure of the Weber, or the first, deed of trust was invalid because it occurred within nine months after the death of Fannie E. Greene, a tenant by the entirety, and, therefore, was in violation of Section 141, Revised Statutes 1929.

"An estate by the entireties is created by a conveyance to the husband and wife by a deed in the usual form. It is one estate vested in two individuals who are by a fiction of law treated as one person, each being vested with entire estate. Neither can dispose of it or any part of it without the concurrence of the other, and in case of the death of either the other retains the estate. It differs from a joint tenancy where the survivor succeeds to the whole estate by right of the survivorship; in an estate by entireties the whole estate continues in the survivor. The estate remains the same as it was in the first place, except that there is only one tenant of the whole estate whereas before the death there were two." [Ashbaugh v. Ashbaugh et al., 273 Mo. 353, 201 S. W. 72, 1. c. 73.]

So we see that whatever interest Fannie E. Greene had in this real estate ceased to exist upon her death. At her death, the appellant owned the entire estate. She did not "die owning real estate on which there is an outstanding deed of trust." Therefore, the foreclosure sale did not come within the prohibition in Section 141, supra.

The trial court did not indicate on what theory the second deed of trust was reinstated. The respondents advance several theories which would justify the trial court in entering this decree, "the first being simple revivor of a second when the maker of a mortgage obtains possession after a foreclosure of a prior mortgage."

The facts in the case of Plum v. Studebaker Bros. Mfg. Co., 89 Mo. 162, 1 S. W. 217, are as follows: Amanda Bettes executed a first mortgage on her real estate to secure a debt of her husband due one Mary Atherton, and later, a second mortgage to secure her husband's debt to Studebaker Bros. Mfg. Co. The second mortgage recited that it was subject to a first mortgage. At the foreclosure sale, under the first mortgage, Atherton, the mortgagee, was the purchaser, and she conveyed the property to Amanda Bettes. The defendants claimed that this after-acquired title of Amanda Bettes revived and reinstated the second mortgage. She later conveyed the property to the plaintiff Plum. In ruling against the defendants' contention, in an opinion prepared by Judge BLACK, we said (Mo. l. c. 166):

"But the second deed of trust was in express terms made subject to the Mary Atherton deed of trust. She owed no contract duty to the defendants to pay off the first deed of trust, and we see no reason why she might not have become the purchaser at the trustee's sale under the first deed of trust, and have thus acquired the property discharged of the lien of the second deed of trust. But in this case the transaction stands on still firmer grounds; for, under our system of deeds of trust, the trustee's sale operated as a complete foreclosure, and cut off the second deed of trust as completely as if there had been a decree of foreclosure with all the parties before the court. Atherton got a perfect title as against the defendants, and it was entirely competent for Amanda Bettes to acquire that title, for she owed no duty inconsistent therewith. Plum took the title freed from any lien, legal or equitable, of the second deed of trust."

We think the rule of law announced in the case of Plum v. Studebaker, supra, is supported by the weight of authority elsewhere, as the following cases will show: Zandri v. Tendler, 123 Conn. 117, 193 Atl. 598; Huzzey v. Hefferman, 143 Mass. 232; Home Owners' Loan Corp. v. Guaranty Title Trust Co., 168 Tenn. 118, 76 S. W. (2d) 109; Bowen v. A. R. Boyd Enterprises (Pa.), 191 Atl. 137; Murray v. Newsom, 111 Fla. 193, 149 So. 387; Kossoff v. Wald, 245 App. Div. 646, 284 N. Y. Supp. 130; Midland Realty Co. v. Halverson, 101 Mont. 49; 52 Pac. (2d) 159; Jester v. Bickers (Tex. Civ. App.), 72 S. W. (2d) 1103. *Contra,* see Martin v. Raleigh State Bank (Miss.), 111 So. 448; Merchants' Natl. Bank v. Miller (N. D.), 229 N. W. 357; Baird v. Chamberlain (N. D.), 236 N. W. 724.

We think the facts in the case at bar come within the rule announced in the case of Plum v. Studebaker, supra. In the case at bar, the real estate was deeded to the appellant, subject to the first deed of trust; in fact, the agreed statement of facts shows that the "grantees (the appellant) do not assume or agree to pay said encumbrance." Thus, we see the debt secured by the first deed of trust was not the personal obligation of the appellant. He was under no obligation to pay it. The second deed of trust, executed by the appellant and his wife, did not purport to convey the fee because it expressly stated it was subject to a first deed of trust. We, therefore, see no reason why the appellant could not have purchased the property under the foreclosure sale of the first deed of trust without reinstating the second deed of trust. Under these circumstances, he is not estopped to assert a title superior to that of the respondent Magidson.

The respondents' second reason why their second deed of trust is a valid lien on this property is "because Greene (the appellant) and the owner of the first deed of trust were guilty of collusion, in connection with the foreclosure, for the express purpose of cutting out Magidson's second deed of trust."

Collusion "has been judicially defined as a secret agreement between two or more persons, whose interests are apparently conflicting, to make use of the forms and proceedings of law in order to defraud a third person. . . ." [11 C. J. 1220.] Assuming there was an agreement between the owner of the note and the appellant that the property was to be foreclosed and later deeded to the appellant, yet, there is no evidence of collusion in this case because the respondent Magidson testified that he knew the property was being foreclosed, that he saw it in the Daily Record. In fact, he testified that he purchased the note secured by the second deed of trust after he knew the foreclosure on the first deed of trust had been begun. He purchased this note from his company in which he owned over eighty per cent of the stock. He gave notice to redeem the property the day it was foreclosed, but testified, "I didn't exercise my right to redeem under my notice to redeem because I just didn't feel like putting in money at that time to go ahead with it." Under these circumstances, we are unable to see any collusion in this case for the reason that Magidson knew all about the foreclosure sale before it took place, and did not protect his junior lien because he evidently did not think the property was worth it.

The respondents rely upon the case of Campbell v. Miller (Mo. App.), 226 S. W. 597, but we do not believe that case is in point. In that case there were three deeds of trust; the owner of the equity of redemption secretly bought the note secured by the second deed of trust and foreclosed it. The notice of sale was carried in a news-

paper published in a small village remote from the county seat and some distance from where the parties lived and the land was located. He purchased the property at a nominal sum. The court held that the sale was the result of collusion and that the holder of the note secured by the third deed of trust was entitled to the surplus. The court commented on the fact that the defendant, or owner of the second deed of trust, did not attend the trial to explain his action.

Although in the case at bar the appellant did not testify in his own behalf, yet he was placed upon the stand by the respondents. Also, the advertisement was published in the Daily Record, and the respondents knew all about it. When he purchased the note, he knew it was a junior lien and that he might be called upon to protect it by paying the note secured by the first deed of trust. We rule this point against the respondents.

■ The third reason that the respondents assign to sustain the trial court is that their second deed of trust is still a lien upon this property "because Greene (appellant), by contract dated April 9, 1932, redeemed the property from the foreclosure under the first and in effect refinanced the first deed of trust, and in express terms recognized the reestablishment of Magidson's second as an existing lien."

We do not believe that the contract of April 9, 1932, is susceptible of such construction. This contract was a conditional sale agreement. If the appellant performed the condition of the contract, he was entitled to a deed conveying the property to him. It is to be remembered that Hughes, the purchaser at the trustee's sale under the first deed of trust, executed a warranty deed, leaving the name of the grantee blank, and delivered this deed to the Julius Haller Realty Co. It was not delivered to the appellant until the HOLC loan was consummated in 1934. Magidson testified that he did not redeem under his notice to redeem. In fact, he failed to comply with Sections 3063 and 3064, Revised Statutes 1929, in that he failed to give within 20 days after the sale "security to the satisfaction of the circuit court . . . for the payment of the interest on the debt. . . ."

There is no doubt that if the appellant had redeemed as provided in the above named section, Magidson's second deed of trust would have revived, for the reason that the owner of the equity of redemption does not get a new title to the property, but his title is merely restored, freed of the lien, but subject to all other liens. [42 C. J., p. 451; Kilpatrick Bros. Co. v. Campbell (Idaho), 281 Pac. 471; DeRoberts v. Stiles (Wash.), 64 Pac. 795.]

■ The contract of April 9, 1934, was executed after the failure of Magidson to redeem under his notice. It provided that if the ap-

pellant would assume and agree to pay a first deed of trust in the sum of $3500 executed by Hughes, and pay all delinquent taxes, accrued interest and cost of foreclosure, which totaled $373.33, in monthly payments of at least $50 per month, then the property would be deeded to him; but if he failed to make these payments, then the previous payments were to be considered as rent for the use of the premises. The contract recited that some question had arisen as to whether a reconveyance of the property to Greene might have the effect of reviving the second deed of trust, which was to be released under the contract. Magidson assisted in negotiating this contract agreement and signed it as an attesting witness. As previously stated, this was not a redemption but a contract for the repurchase of this property and, of course, did not revive the second deed of trust.

The respondents' last reason that the second deed of trust is a valid lien is "because Greene and the other parties entered into a contract with Magidson for the release of his second deed of trust on the payment of a certain consideration to him and, by virtue of that contract, are estopped to deny the existence of that second deed of trust."

Estoppel is an affirmative defense and must be pleaded. Whether there are exceptions to the rule when the plaintiff's bill on its face, or his evidence, shows estoppel, is a question not raised by the facts in this record. Therefore, this question is not before us. [State ex inf. McKittrick, Atty. Gen. ex rel. City of Campbell v. Arkansas-Missouri Power Co., 339 Mo. 15, 93 S. W. (2d) 887; Ambruster v. Ambruster, 326 Mo. 51, 31 S. W. (2d) 28, 77 A. L. R. 782.]

Finally, the respondents seek to sustain the judgment for the reason that the appellant did not come into court with clean hands. Of course, if he did not, he can get no relief in a court of equity. This rule is so well known that no citation of authority is needed to sustain the maxim. To sustain this charge, the respondents contend that the appellant did not take the stand in his own behalf, but was called by the respondents. The respondents in their answer charged the appellant with fraud. That is an affirmative defense and it was the duty of the respondents to prove it, not of the appellant to disprove it. The appellant was in court and was placed upon the stand. After carefully reading the testimony, we think that he answered the questions put to him frankly and was in no sense an unwilling witness, as contended by the respondents. The respondents say that the appellant's admission that he entered into a contract, contemplating to breach it, was evidence that he did not come into court with clean hands. As we read the evidence, we find there was no contract because the holder of the note did not agree to pay the respondents $400 of the $750 which the respondents de-

762

manded for the release of their second deed of trust. It is true the appellant testified that he did not want to go through with the payment of the $350 note if he did not have to do so to complete his loan with the HOLC, but we cannot see where that would prevent a court of equity from lending its aid to the appellant, when there were grave doubts in his mind that the respondents' second deed of trust constituted a lien upon his property.

From what we have said, it follows that the respondents' second deed of trust constitutes no lien upon this property in question, and the judgment of the trial court should be reversed. It is so ordered. All concur.