STONE *v.* MORRIS.

Opinion delivered June 25, 1928.

*Eugene Cypert,* for appellant.
*Morris & Barron,* for appellee.

MEHAFFY, J. The appellee, G. W. Morris, brought suit in the White Chancery Court against Sam Wexman for $1,000 and interest at the rate of 10 per cent. per annum, and alleged that, as collateral security, Wexman had deposited with him a note of Mr. and Mrs. T. L. Tyson for $2,800, with interest at 8 per cent. per annum, which was secured by a second mortgage on the land in controversy, and the plaintiff alleged that defendants, W. A. Stone and Ethel Stone, his wife, were in possession of the land without right, and that said land was not of sufficient value to pay the indebtedness, and asked for a receiver to take charge of the same. Appellee also alleged that Tyson was a nonresident, and asked that Wexman, Tyson and wife and Stone be made parties defendant.

Sam Wexman filed answer, admitting the indebtedness mentioned, and asking the foreclosure of the mortgage originally executed to him, and joined appellee in prayer for receiver, and judgment was asked in the original suit in the name of G. W. Morris.

W. A. Stone and Ethel Stone filed their answer, claiming title to the land by virtue of a deed of trust executed by the defendants, Mr. and Mrs. T. L. Tyson, to C. B. Tucker as trustee, to secure indebtedness due to W. N. Harlan. This deed of trust was executed on the second day of December, 1921, prior to the mortgage executed to Wexman. The property described in the deed of trust given to Tucker to secure the indebtedness to Harlan was sold under the power in the mortgage, and Harlan became the purchaser. Harlan then sold to

Mrs. T. L. Tyson, and Mrs. Tyson sold to the defendant, W. A. Stone.

Appellee filed an amendment to his complaint, alleging fraud and collusion on the part of Harlan and Stone and wife, and alleged that Harlan had sold to Mrs. T. L. Tyson, and that the mortgage to Wexman became a prior lien on the land in controversy. He also denied that Stone was an innocent purchaser.

Sam Wexman's mortgage, which was given to Morris as collateral security, was a second mortgage, W. N. Harlan having a first mortgage amounting to $1,500, and the note made by Wexman included not only the amount that he borrowed from Wexman, but the $1,500 that he owed Harlan, and Wexman agreed to pay this $1,500. He did not pay it, however, because Harlan did not want him to do so. But, after he had offered to pay it, Harlan, through the trustee in his mortgage, without notice either to Wexman or Morris, had the land sold under the terms of the first deed of trust, and purchased the property at the sale. After the time for redemption had expired, Harlan resold the land to Mrs. T. L. Tyson. The deed from Harlan to Tyson does not appear in evidence, but the record shows a joint deed of trust given by Mr. and Mrs. T. L. Tyson to secure an indebtedness of $675 to W. N. Harlan. This deed of trust is dated February 24, 1926.

Stone alleged in his answer that in February, 1926, he received a deed from Mr. and Mrs. Tyson to the lands involved in the suit. The deeds were not introduced in evidence. There is no evidence as to the consideration.

The chancellor found from the exhibits, pleadings and testimony taken orally that Mr. and Mrs. T. L. Tyson, as joint mortgagors, conveyed by mortgage the lands in controversy to Sam Wexman for the purpose of securing an indebtedness of $1,300.45, with interest at the rate of 8 per cent. per annum until paid, and that this mortgage was subject to a prior lien by Harlan. That Harlan foreclosed his lien, purchased the property himself, and, a year thereafter, resold it to Mrs. Tyson,

retaining a lien thereon to secure $675; that, by reason of the covenant of warranty contained in the mortgage given to Sam Wexman, his mortgage became a valid lien upon the real property when it was repurchased by Mrs. T. L. Tyson, subject to a lien in favor of Harlan in the sum of $675. That appellee, G. W. Morris, has a lien on said lands, prior and paramount to all claims of the defendants, in the sum of $1,458.33. Also that cross-complainant, Sam Wexman, has a lien on said land, subject to appellee's lien and the lien in favor of W. N. Harlan, in the sum of $360.44.

The court decreed that, if said lien be not paid off within ten days from the date of the decree, the commissioner should advertise and sell said real property.

There is very little of the testimony abstracted by the appellant, and from the testimony abstracted it very clearly appears that the Tysons had mortgaged the land to Harlan and afterwards to Wexman. That Harlan's mortgage was a prior lien. They transferred the note and mortgage from the Tysons to the appellee, Morris, as collateral security for Wexman's indebtedness to Morris. Wexman took a note and mortgage and, it appears from the abstract, agreed to pay Harlan. It also appears that he offered to pay Harlan, and Harlan did not want the money. But afterwards, without notice to Morris or Wexman, Harlan caused the land to be sold by the trustee under the power of sale in the mortgage, and became the purchaser, kept it for about a year, until the time for redemption had expired, and then conveyed the land to Mrs. Tyson.

Section 1498 of Crawford & Moses' Digest provides: "If any person shall convey any real estate by deed, purporting to convey the same in fee simple absolute, or any less estate, and shall not, at the time of such conveyance, have the legal estate in such lands, but shall afterwards acquire the same, the legal or equitable estate afterwards acquired shall immediately pass to the grantee, and such conveyance shall be as valid as if such legal or equitable estate had been in the grantor at the time of the conveyance."

The Tysons conveyed this land to Wexman, permitted it to be sold under the prior mortgage, purchased by Harlan, and then Harlan reconveyed to Mrs. Tyson.

In construing the above statute, which was § 734 of Kirby's Digest, this court said: "In this case the appellant's defense was that they purchased the land from the Broadways, who conveyed the land to them on the 4th day of September, 1895. They previously, on the 2d day of December, 1894, conveyed the land by mortgage to Sidway. The statute in such cases provides." Then the court copies the statute, which is above copied as § 1498 of Crawford & Moses' Digest, and continues:

"In this case the estate acquired by purchase from the Broadways vested in Sidway by virtue of the mortgage." *Broadway* v. *Sidway*, 84 Ark. 527, 107 S. W. 63.

Chief Justice COCKRILL, speaking for the court, in passing on this statute, said:

"We have no reported case in which the statute has been held to apply to a mortgage, but, as the mortgage is with us, as at common law, the conveyance of a conditional estate, and the statute by its terms applies to any conveyance purporting to convey a fee simple or any less estate, the provisions must be held to apply to mortgages equally as to conveyances absolute in form." *Kline* v. *Ragland*, 47 Ark. 111, 14 S. W. 474.

Continuing, the court in the above case said:

"The prevailing doctrine of the after-acquired title inuring to strengthen the mortgage lien, in the absence of a statutory provision, is that, in order to have that effect, the conveyance must contain a covenant of warranty or something nearly akin to it. The usual covenant of warranty is not found in the mortgage in this case, but in the *habendum* clause it is recited that the land shall be held by the mortgagees, their heirs and assigns, 'against the lawful claims and demands of all persons whomsoever.' * * * Without the aid of the statute referred to, which, as we have heretofore held, modified the rule as to the character of deed required to enable the grantee to take the after-acquired title, this convey-

ance appears to be sufficient to have that effect, but under the statute there can be no doubt of it.''

Under this and other decisions of this court, this statute applies to mortgages as well as to conveyances absolute in form. If the Tysons had made a deed to Wexman without having a title, and afterwards acquired title, no one would contend that the after-acquired title would not pass to the grantee, in this case to the mortgagee. See also *Grayson-McLeod Lumber Co.* v. *Duke,* 160 Ark. 76, 254 S. W. 350; *Wyman* v. *Johnson,* 68 Ark. 369, 59 S. W. 250; and *Turman* v. *Sanford,* 69 Ark. 95, 61 S. W. 167.

In the last case the court said:

''The statute in reference to the grantor's after-acquired title was enacted to prevent fraud and effect justice, but, under the circumstances here, it would be neither right nor just to compel Turman to pay his mortgage debt a second time to one who had given him no notice of his claim until after the payment of the debt. For these reasons we think the plaintiff, under the facts stated in the record, cannot recover.''

In the instant case there is no question of the Tysons paying their debt twice. They had never paid Wexman. They did not claim to have paid him, but permitted Harlan to sell the property under his mortgage, purchase it himself, and then deed it to Mrs. Tyson, without paying or offering to pay Wexman. If this statute was enacted to effect justice, as this court has held, it would certainly be unjust and inequitable and a violation of the spirit of this statute to permit one to acquire title from a mortgagee who had bought under a prior mortgage, and then defeat the payment or hold that the land was not subject to the lien of the second mortgage.

It is contended, however, by appellant, that Mrs. Tyson sold to the defendant, Stone, and that Stone holds the title to the land both in law and equity, and that Wexman is estopped. The purchasers from Mrs. Tyson purchased with notice of Wexman's mortgage. There can be no doubt about their actual knowledge of Wexman's

mortgage, and they are in no better position than the Tysons.

It is contended also by the appellant that the defendant, Stone, holds under the foreclosure of the Harlan mortgage. As a matter of fact, he holds under a conveyance from Mrs. Tyson, one of the original mortgagors, who acquired the title after the execution of the mortgage to Wexman and with notice of Wexman's mortgage.

It would be unjust and inequitable to permit the sale under the power of the mortgage, a purchase by Harlan, the mortgagee, and a conveyance to Mrs. Tyson, and thereby defeat or prevent Wexman from resorting to the land to collect his debt. We think the statute was enacted for the purpose of preventing injustice of this sort.

Appellant, however, contends that Wexman knew of the prior mortgage, and turned down the check or draft when the deed was tendered to him, and that Wexman therefore is estopped. But the testimony abstracted by both appellant and appellee shows that Wexman agreed to take up the first mortgage of $1,500, but that he did not take up the note held by Harlan because Harlan did not want his money; that he never refused to pay Harlan. That he did not refuse to pay any draft for the amount of the first mortgage, but he testified the reason he did not take up the mortgage was that there was no release deed. If there is any testimony anywhere in the record that there was a release deed sent to Wexman, or that he refused to pay Harlan, it is not abstracted.

There is not much conflict in the testimony, and it cannot be said that the finding of the chancellor is against the preponderance of the evidence.

The decree of the chancellor is correct, and is affirmed.