Margaret V. SABINE, Respondent,

v.

O. W. LEONARD et al., Appellants.

No. 46654.

Supreme Court of Missouri,

En Banc.

March 9, 1959.

Walter R. James, Harry Howard, James S. Simrall, Jr., North Kansas City, for appellants.

Lucian Lane, Woodruff & Lane, Kansas City, for respondent.

HOLMAN, Commissioner.

In this action plaintiff sought a judgment on a promissory note signed by defendants O. W. Leonard and Lena Leonard, husband and wife, and a decree of foreclosure of a deed of trust given to secure said note. Also made defendants are certain subsequent purchasers and mortgagees of portions of the land described in the deed of trust securing plaintiff's note. A trial resulted in a judgment against the Leonards upon the note in the sum of $7,617.98 and a decree to the effect that the deed of trust securing said note is a first and valid lien on all of the premises therein described, and ordering foreclosure of said deed of trust. All of the defendants have appealed. Since the Leonards contend that the amount of the judgment should have been only $52.50, it is apparent that the amount in dispute exceeds the sum of $7,500 and hence we have appellate jurisdiction. Article V, Section 3, Constitution of Missouri 1945, V.A.M.S.

On February 5, 1925, O. W. and Lena Leonard bought a 4-acre tract of land described as the "South Half of Lot 25, and all of Lot 26, in Midland Heights Annex, a subdivision in Clay County, Missouri." The Leonards, on February 24, 1925, executed a note payable to Harry Colvin for $3,000 which was secured by

a deed of trust on the west half of the described land. On March 1, 1925, the Leonards executed their promissory note payable to Henry P. Bowman for $2,627.50, secured by a purchase money deed of trust on the whole tract heretofore described. This is the note and deed of trust upon which plaintiff bases her claim for relief herein. The deed of trust recites that "This deed of trust is second and subject to a first deed of trust for $3,000 on the West Half of above described property." The note to Bowman thereafter became an asset of a trust estate and subsequently was assigned to plaintiff, the beneficiary of the trust. The Leonards built a house upon the west half of the land in question, but the east half has never been improved.

The note sued upon bore 6% interest and was payable in installments of $20 per month except for the months of March and September of each year. The note shows that on October 3, 1925, a payment of $120 was made which was credited upon interest, but no other payments have been made thereon.

The first deed of trust was foreclosed and the property sold thereunder on April 3, 1936, and was purchased by Mary B. and Charles L. Cookson for $1,500. Notwithstanding the foreclosure, the Leonards continued to occupy the premises as their home and, in fact, have occupied it without interruption from the time the house was constructed until the time of trial herein.

On July 12, 1937, Mrs. Cookson (the widow of Charles L. Cookson) conveyed the property she had acquired at the foreclosure sale to Alexander F. and Genevieve Himmelberg who were the son-in-law and daughter of the Leonards. The Himmelbergs paid nothing to Mrs. Cookson but gave a note for $3,500, secured by· deed of trust upon said premises. Before taking title, Mr. Himmelberg made arrangements with Mr. Leonard whereby Leonard was to continue to occupy the premises and pay rent in the sum of $35 per month, directly to Mrs. Cookson, upon the Himmelberg note. The Himmelbergs made no payments on the note and had no knowledge of the number of payments the Leonards made thereon. However, on June 18, 1941, Mrs. Cookson brought suit to foreclose the Himmelberg deed of trust and on December 9, 1941, obtained a judgment of foreclosure.

Mr. Everett Meyer, who was Mrs. Cookson's attorney, was also Mr. Leonard's attorney. On January 19, 1942, he represented Mr. Leonard in filing a petition in bankruptcy and a few days thereafter Mr. Leonard was adjudged a bankrupt. The note herein sued upon, however, was not scheduled in the bankruptcy proceedings and therefore is not affected thereby. On February 11, 1942, Mr. Meyer obtained a deed from the Himmelbergs conveying the property in question to Mr. Leonard. On the following May 15, the Leonards executed a new note and deed of trust to Mrs. Cookson for $3,000, and also a note and deed of trust to Everett Meyer for $700. These deeds of trust were recorded and the judgment of foreclosure against the Himmelbergs was satisfied of record without any payment ever having been made thereon by the Himmelbergs. As noted, the deed from the Himmelbergs was to Mr. Leonard alone. In September 1945, he and his wife made a deed to Bessie Utz who immediately reconveyed the property to Leonard and his wife so that they thereafter held title as tenants by the entireties. At about that same time the Leonards borowed $2,000 from the Sentinel Federal Savings & Loan Association upon the security of said land, and the deeds of trust to Mrs. Cookson and to Mr. Meyer were released of record. Thereafter, the Leonards made various conveyances to portions of said tract and most of the purchasers thereof constructed improvements thereon and borrowed substantial sums, upon the security of said land, from the Sentinel Federal Savings & Loan Association, or the Metropolitan Savings & Loan Association.

The facts heretofore stated appear in certain findings of fact given by the trial court. The court also filed certain conclusions of law which included the following: "Notwithstanding the foreclosure on April 3, 1936 of the first deed of trust dated February 25, 1925 by the trustee herein because of nonpayment by defendants Leonard of their promissory note secured thereby and of the sale of the property covered thereby * * * to Mary B. Cookson and Charles L. Cookson the subsequent acquisition of fee simple title to said real estate by defendant O. W. Leonard on February 11, 1942, inured to the benefit of owner of the promissory note sued on herein and re-established the lien of the deed of trust securing it. Under the Missouri law and particularly under the provisions of RSMo 1949, Section 442.430 [V.A.M.S.], the title so acquired by the makers of the note and mortgage sued on passed to and inured to the benefit of the owner of the note and deed of trust sued on herein without regard to whether the subsequent acquisition of title to the land by the maker of the note and deed of trust is deemed to be fraudulent." The court further found and declared that the Leonards, in reacquiring the property, used the Himmelbergs "as straw parties or conduits of title * * * because the financial condition of defendant O. W. Leonard, as shown by his bankruptcy, would not permit him to acquire title in his own name, for the purpose of attempting to avoid or defeat or destroy the security of the deed of trust sued on herein and to reacquire the land free of the lien thereof and under the evidence herein the defendants Leonard in so doing were guilty of fraud and because thereof, in equity, the title so acquired inured to the benefit of the deed of trust sued on herein and re-established the lien thereof."

As appears from the facts stated the deed of trust sued on has been a first lien upon the unimproved land constituting the east half of the land originally purchased by the Leonards since the dates of its execution. Upon this appeal the primary issue for our determination relates to the lien thereof upon the west half of said land upon which there was a prior deed of trust. Defendants contend that there was no evidence of fraud in the foreclosure of the first deed of trust, and, since the second deed of trust expressly recited that it was subject to the first, the foreclosure of the first deed of trust extinguished the lien of the second, and it was not reinstated when the property was later conveyed to the mortgagors. Plaintiff, however, contends that the lien of her second deed of trust was revived and reinstated when the mortgagors, who had personally executed both the first and second deeds of trust (and the notes they secured), reacquired the title after the foreclosure of the first deed of trust; that said after-acquired title inured to the benefit of the second mortgagee even if no fraud had been shown.

No Missouri case has been cited in which this precise factual situation was presented. Defendants rely upon Plum v. Studebaker Bros. Mfg. Co., 89 Mo. 162, 1 S.W. 217, and Greene v. Spitzer, 343 Mo. 751, 123 S.W.2d 57. In each of those cases it was held that the lien of the second deed of trust was not reinstated when the mortgagor reacquired the property after foreclosure of the first trust deed. However, it would seem that those cases may perhaps be distinguished from the instant one because the second mortgagors therein were not under any obligation to pay the first mortgage debt. Note the following from the Plum case: "Here Amanda Bettes [mortgagor] did not undertake to pay the debts secured by either of the deeds of trust. * * * She being a married woman, and the property being her general estate, she was not liable on any covenants contained in the second deed of trust with respect to the title to the property. * * * Atherton [purchaser at foreclosure of first deed of trust] got a perfect title as against the defendants, and it was entirely competent for Amanda Bettes to acquire that

title, for she owed no duty inconsistent therewith." 1 S.W. loc. cit. 219. And, in the Greene case, the following appears: "We think the facts in the case at bar come within the rule announced in the case of Plum v. Studebaker Bros. Mfg. Co., supra. In the case at bar, the real estate was deeded to the appellant, subject to the first deed of trust; in fact, the agreed statement of.facts shows that the 'grantees [the appellant] do not assume or agree to pay said encumbrance.' Thus, we see the debt secured by the first deed of trust was not the personal obligation of the appellant. He was under no obligation to pay it. The second deed of trust, executed by the appellant and his wife, did not purport to convey the fee because it expressly stated it was subject to a first deed of trust. We, therefore, see no reason why the appellant could not have purchased the property under the foreclosure sale of the first deed of trust without reinstating the second deed of trust. Under these circumstances, he is not estopped to assert a title superior to that of the respondent Magidson." 123 S.W.2d loc. cit. 61.

Plaintiff has cited the case of Huffman v. Brigance, Mo.App., 128 S.W.2d 639 (see also State ex rel. Brigance v. Smith, 345 Mo. 793, 135 S.W.2d 355). Therein the owner gave four deeds of trust. The bank holding the third purchased the note securing the second and upon foreclosure of the second the bank purchased the land. Thereafter the entire indebtedness of the owner to the bank was paid from the proceeds of a life insurance policy that had been pledged to it by the owner as additional security. The bank then deeded the land to a trustee for the heirs of the deceased mortgagor. The court held that said heirs received the land subject to the lien of the fourth deed of trust. However, that case must be distinguished from the case at bar because it clearly appeared therein that the bank was holding title to the land only as security for the mortgagor's indebtedness to it. In other words, the bank was really holding title for the benefit of the mortgagor subject to the payment of his debt to it.

■ We have concluded (regardless of any question of fraud) that, under the provisions of Sections 442.420 and 442.430 (unless otherwise indicated all statutory references are to RSMo 1949, V.A.M.S.), which were in effect on all the dates herein mentioned, the title acquired by the Leonards after the foreclosure of the first deed of trust immediately passed to the trustee of the instant (second) deed of trust for the benefit of the holder of the note secured thereby.

It is provided in Section 442.420 that the words "grant, bargain and sell," which are contained in the instant deed of trust, "in all conveyances in which any estate of inheritance in fee simple is limited, shall, unless restrained by expressed terms contained in such conveyances, be construed to be the following expressed covenants on the part of the grantor, for himself and his heirs to the grantee, his heirs and assigns: (1) That the grantor was, at the time of the execution of such conveyance, seized of an indefeasible estate, in fee simple, in the real estate thereby granted; * * * (3) For further assurances of such real estate to be made by the grantor and his heirs to the grantee and his heir and assigns; * * *." Section 442.430 reads as follows: "Where a grantor, by the terms of his deed, undertakes to convey to the grantee an indefeasible estate in fee simple absolute, and shall not, at the time of such conveyance, have the legal title to the estate sought to be conveyed, but shall afterward acquire it, the legal estate subsequently acquired by him shall immediately pass to the grantee; and such conveyance shall be as effective as though such legal estate had been in the grantor at the time of the conveyance."

We have repeatedly held that the foregoing sections are applicable to deeds of trust and that title subsequently acquired by the grantor in a deed of trust would pass immediately to the trustee therein.

Cockrill's Adm'x v. Bane, 94 Mo. 444, 7 S.W. 480; Boyd v. Haseltine, 110 Mo. 203, 19 S.W. 822; Hume v. Hopkins, 140 Mo. 65, 41 S.W. 784; Seaman v. Seaman, Mo. Sup., 181 S.W. 22; Hamlin v. Hawkins, 332 Mo. 1098, 61 S.W.2d 348.

Would the fact that the second deed of trust was made subject to the first deed of trust preclude the title acquired by the Leonards, after foreclousre of the first deed of trust, from passing to the trustee in the second deed of trust? We think not. That clause should be construed as the identification of a lien which is superior from the standpoint of priority but in no other way affecting the statutory covenant between the parties.

As previously stated, there is no case in this state in which the question before us has involved the factual situation presented herein. We recognize that there is a division of authority in other states. For a review of the cases see the annotations in 51 A.L.R. 445, and 111 A.L.R. 1285. Some of the cases base the decision upon the particular covenant of warranty in the second deed of trust. Other cases are decided upon the theory that the mortgagor who reacquires the title after foreclosure of the first deed of trust is estopped, either by the expressed or statutory warranty, from asserting that title against the lien of the second deed of trust. (We are not considering herein the cases based upon fraud.)

We agree with the views expressed in the following statement: " 'It has been held in many cases (and can probably be said to be the general rule) that when a person executes two or more mortgages or deeds of trust on the same land, a foreclosure under the senior mortgage will only temporarily extinguish or cut out a junior mortgage, if the mortgagor subsequently acquires title to the land, and the junior mortgage will be revived and reinstated as a valid lien against the property. The reason for the rule of revival or reinstate-

ment is because of the statutory warranty contained in the junior deed of trust. In most states, "Grant, Bargain and Sell," or some similar phrase, is a statutory warranty, and after acquired title inures to the benefit of the grantees. Hence, when the words, "Grant, Bargain and Sell," appear in the junior deeds of trust or mortgages, a foreclosure of a prior lien will not cut out the junior mortgages where the mortgagor buys the property at the trustee's sale, and if a stranger buys at such sale, thereby extinguishing the junior liens, they will be revived should the property be reconveyed to the mortgagor.' " Indiana Law Journal, Vol. 11, p. 436. The foregoing views are strongly supported by the cases of Stone v. Morris, 177 Ark. 745, 7 S.W.2d 796, and Jensen v. Duke, 71 Cal. App. 210, 234 P. 876. Each of those cases involved facts substantially the same as those presented in the case at bar. In each case the court held that in view of the "after-acquired title" statute the lien of the second mortgage was revived upon the reacquisition of the title by the mortgagor. Other cases tending to support the view we have adopted are Kerr v. Erickson, Tex.Com.App., 24 S.W.2d 21, and Martin v. Raleigh State Bank, 146 Miss. 1, 111 So. 448, 51 A.L.R. 442. Many other cases which appear to support our ruling have not been cited because they are based upon specific provisions in the deed of trust which are not contained in the instant deed of trust.

We note that the case of Plum v. Studebaker Bros. Mfg. Co., supra, has been construed by the courts of some states in a manner that would cause our ruling herein to be in conflict therewith. While, as heretofore stated, we have considered the Plum and Greene cases, supra, as distinguishable from the instant one, it may be that if the court in those cases had considered the statutes heretofore cited (now Sections 442.420 and 442.430), a different result would have obtained. Therefore, to the extent that the Plum and Greene cases

may be interpreted as in conflict with the views herein expressed, they should no longer be followed.

If the payments on the instant note had been made according to schedule the last principal payment would have been made on May 1, 1938. This action was commenced on March 27, 1948, which was less than ten years from the date the last payment became due. The remaining point briefed by defendants is that the statute of limitation ran on each installment ten years after it became due so that all installments had been barred by the statute at the time the suit was filed, except the last two installments of principal, and certain interest, all of which totaled $52.50.

■ The period of limitations on a promissory note is ten years. Section 516.110. Also, if recovery on a note has been barred by the statute, the right to foreclose a deed of trust securing the same is also barred. Section 516.150; Oehler v. Philpott, Mo. Sup., 263 S.W.2d 201. The general rule is that "when recovery is sought on a note or other obligation payable by instalments, the statute of limitations runs against each instalment from the time it becomes due; that is, from the time when an action might be brought to recover it." Annotation, 82 A.L.R. 316, 317. See also 34 Am.Jur., Limitation of Actions, Sections 142 and 146, pp. 114, 117; and 54 C.J.S. Limitations of Actions § 156 p. 96. The only case in this state that has decided the instant question is Stark Bros. Co. v. Gooding, 175 Mo.App. 353, 162 S.W. 333. In that case (decided in 1914) plaintiff sought to recover upon a written contract for the payment of a sum of money in installments. The court held that the statute of limitations began to run on each installment when it became due as the cause of action thereon accrued at that time. In reaching that decision the court applied the strict provisions of the introductory section of the chapter on limitation of personal actions, which read as follows: "Civil actions, other than those for the recovery of real property, can only

be commenced within the periods prescribed in the following sections, after the causes of action shall have accrued." Section 1887, RSMo 1909.

However, in 1919 the legislature amended the foregoing section by adding a proviso thereto which was obviously intended to explain and perhaps limit the application of the strict, arbitrary provision contained in the statute. Following that amendment the statute read (and now reads) as follows: "Civil actions, other than those for the recovery of real property, can only be commenced within the periods prescribed in the following sections, after the causes of action shall have accrued; provided, that for the purposes of sections 516.100 to 516.370, the cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment, and, if more than one item of damage, then the last item, so that all resulting damage may be recovered, and full and complete relief obtained." Section 516.100.

■ Plaintiff contends that the 1919 amendment to Section 516.100 abrogated the authoritative effect of the decision in the Stark Bros. case; that by the specific terms of the amended statute the cause of action for breach of an installment contract for the payment of money shall not be deemed to accrue (for purposes of computing the limitation period) until the last item shall become due so that all damages (unpaid installments) may be recovered and complete relief obtained in one action. We have concluded that plaintiff has correctly interpreted the statute.

■ There can be no question but that the proviso in question applied to Section 516.110 (which is the limitation section applicable to a note), as it was specifically stated therein that such was applicable to that and some twenty-seven other sections relating to limitation of personal actions. Moreover, it specifically refers to a breach of contract. A promissory note is a writ-

ten contract for the payment of money and a failure to pay any installment thereof when it becomes due would be a breach of contract. Note also the following: "* * * and, if more than one item of damage, then the last item, so that all resulting damage may be recovered, and full and complete relief obtained." Section 516.-100.

We recognize that under modern practice the amount recovered in an action on a note is generally referred to as a debt and perhaps not as "damage." However, we think that the legislature intended, in the last quoted portion of the proviso, to use the word "damage" in a broad sense so that it would be applied to any of the twenty-eight enumerated sections wherein its application would seem reasonable. Moreover, it should perhaps be noted that in past years it has not been at all unusual for courts to refer to the recovery on a note as "damages." For example, observe Instruction No. 1 in Frost v. Jensen, Mo. App., 155 S.W.2d 553, 554, and the reference to the verdict in Oliver v. Love, 104 Mo.App. 73, 78 S.W. 335, 336. In an early case wherein the plaintiff sought to recover one installment of a note before the others became due, the court stated, "The money here sued for is claimed as a debt. A debt is not divisible. Strictly, this action, in form, should have been for damages. The objection, however, would probably not be available under the present practice act * * *." Caples v. Branham, 20 Mo. 244, 248. Even under our present practice it would seem that the recovery upon breach of a written contract to pay money might properly be referred to as liquidated damages.

We recognize that in the personal injury case hereafter cited, the fact that it became necessary to perform an operation upon the plaintiff three years after the injury, was held (under Section 516.100) not to delay the commencement of the limitation period, the court stating in the opinion that such matters were "but aggravating circumstances enhancing the legal injury already inflicted, and constituting mere developments of such injury, and were not of a character to delay the accrual of the cause of action." Allison v. Missouri Power & Light Co., Mo.App., 59 S.W.2d 771, 773. However, that is not the situation in the case at bar. Here, we do not have the mere development of a cause of action. A separate item (installment) became due each month. Plaintiff could have sued to recover any one or more installments at any time. We have already indicated our view that the word "damage" as used in the statute would include the recovery in a suit on a note or other similar written contract. The legislature, probably for the purpose of avoiding a multiplicity of suits, as we construe Section 516.100, has seen fit to provide that in suits upon contracts where there is "more than one item of damage" (installment) "the cause of action shall not be deemed to accrue" (for the purpose of certain sections, including 516.110) until the last item of damage is sustained (last installment becomes due) so that all damages (installments) "may be recovered, and full and complete relief obtained" in one action. Defendants have cited the case of Allen v. Allen, 364 Mo. 955, 270 S.W.2d 33, but that case is so factually different from the instant case that it has no application to the question before us.

As indicated, we rule that under the provisions of Sections 516.100 and 516.110, the trial court did not err in concluding that "no part of the promissory note sued on herein was barred by any statute of limitations."

The judgment is affirmed.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court en banc.

HOLLINGSWORTH, C. J., and HYDE, WESTHUES, STORCKMAN and DALTON, JJ., concur.

EAGER and LEEDY, JJ., dissent in part and adopt opinion of COIL, C., as their dissenting opinion.

COIL, Commissioner (dissenting in part).

I dissent from that part of Judge HOLMAN'S opinion which holds that none of the instalments due by virtue of the provisions of the promissory note were barred by the statute of limitations and which holds in connection with that conclusion that the 1919 amendment to present Section 516.100 makes the otherwise settled law inapplicable to instant facts. The essential portions of the promissory note in question are:

"Kansas City, Mo., March 1, 1925

"For value received we promise to pay Henry P. Bowman or order, the sum of Twenty Six Hundred Twenty Seven & 50/Dollars, at the office of R. F. Porter in Kansas City, Mo., in monthly installments, payable as follows, to-wit: Twenty dollars on the 1st day of April 19 —— and $20 dollars on the 1st day of each succeeding month thereafter except months of March and September of each year until the whole sum named is fully paid with interest from this date at the rate of 6 per cent per annum. The interest on each installment and the interest on the unpaid balance of the principal sum are to be paid at the maturity of each installment. If default is made in the payment of any installment when due, then all the remaining installments shall become due and payable at once. Privilege is given to pay two or more installments at any time.

"O. W. Leonard
"Lena Leonard"

There can be no question but that the above note is a contract to pay money in instalments and thus is a divisible contract, and that each default in payment of an instalment is the subject of an independent action if brought before the next instalment becomes due. 1 Am.Jur., Actions, § 107, p. 49. The opinion at page 837 of 322 S.W.2d concedes that the general rule is that " 'when recovery is sought on a note or other obligation payable by instalments, the statute of limitations runs against each instalment from the time it becomes due; that is, from the time when an action might be brought to recover it.' " The opinion also concedes that Stark Bros. v. Gooding, 175 Mo.App. 353, 162 S.W. 333, is an adjudicated case in this state applying that well-established general rule. Another Missouri case which applies the established rule is Boyd v. Buchanan, 176 Mo.App. 56, 162 S.W. 1075.

Clearly, the fact situation where a note or other contract provides for the payment of money in instalments is no different (in so far as concerns the applicable law) than if the maker or promissor had executed as many separate notes or contracts as there are instalments which come due at stated times under the provisions of the instant divisible contract. In either event, the promisee has a separate cause of action for each note or for each instalment. Grue v. Hensley, 357 Mo. 592, 210 S.W.2d 7, 11 [7] [8]. And the only possible question in this case is whether the promisee had a cause of action by the assertion of which he could enforce the payment of each instalment when it became due, or whether the note constituted a single indivisible contract so that only one single cause of action arose and so that only one action could be maintained to recover the full amount of the note, either at its maturity or, at the option of the holder, in accordance with the acceleration provisions thereof. In other words, once it appears (and there is no dispute about it) that the instant contract is divisible and that the promisee had a separate cause of action for the recovery of each instalment when it became due, then it must follow that the cause of action as to each instalment accrued the moment the right to commence each such action came into existence. For it is well settled that a cause of action ac-

crues when a suit may be maintained, and, of course, the statute of limitations begins to run from that time. Hunter v. Hunter, Mo., 237 S.W.2d 100, 103 [4]; Coleman v. Kansas City, 353 Mo. 150, 182 S.W.2d 74, 78 [14]; Beard v. Citizens' Bank of Memphis, Mo.App., 37 S.W.2d 678, 679 [1, 2].

I take it that there is no dispute about the proposition just stated, viz., that à cause of action accrues the instant the right to commence an action comes into existence and that the statute of limitations commences to run from that time (Coleman v. Kansas City, supra). If that be true, is it not then apparent that it begs the question to suggest and hold, as the opinion does at page 838 of 322 S.W.2d that the proviso added by the 1919 amendment to Section 516.100 affects or determines when the cause of action on each instalment accrued? That proviso in pertinent part is, "that the cause of action shall not be deemed to accrue when * * * the technical breach of contract * * * occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment, and, if more than one item of damage, then the last item, so that all resulting damage may be recovered, and full and complete relief obtained." It is apparent to me that the "items of damage" referred to are the "items of damage" that occur under or result from the *breach of each separate contract*. It is equally apparent that the "last item" of damage means *the "last item" under each separate contract*. The provisions as to "items of damage" do not and cannot determine whether there is in fact one or two causes of action. In other words, under the provisions of the 1919 amendment a cause of action does not accrue until the "last item" of damage is ascertainable, but that means the "last item" of damage under each separate contract (in the case of divisible contracts, as is the instant one) and the fact that there may be an "item of damage" resulting from the breach of each successive instalment (separate contract) does not determine *when the cause of action accrued as to each complete contract and does not determine whether a particular note or contract was single or divisible*.

The basic fallacy of the opinion is that it assumes, contrary to the undisputed fact, that the note in question constitutes a single indivisible contract. The fact is to the contrary. Admittedly, the contract here is divisible and a separate cause of action arises upon each default in the payment of an instalment. Thus, if one may bring an action on each instalment when it becomes due, then he has a separate cause of action for each instalment and there is only *one* item of damage involved under each cause of action, and the "last item" proviso is wholly inapplicable. Now, as noted, whether one may bring an action on each instalment *depends on whether the contract is single or divisible; it does not depend on whether subsequent instalments are or are not paid*. To say that the statute of limitations does not begin to run until the last instalment is due is to say, in effect, that the instant contract is a single indivisible contract and that under it only one cause of action ever comes into existence and that to bring an action on that contract prior to the final instalment being due would be splitting the single cause of action. It is to say also that the fact that an item of damage subsequently accrues under a separate and distinct contract, prevents the running of the statute of limitations against a prior separate and distinct contract under which a like item of damages had theretofore accrued.

For the reasons stated, the 1919 amendment is by its terms not applicable to instant facts and, therefore, I would apply the established general rule and hold that recovery of all instalments for which an action was not begun within 10 years of the accrual of the cause of action for each such instalment is barred.