In the Missouri Court of Appeals
 Eastern District
 DIVISION ONE

 SALLY BACON, ) No. ED109141
 )
 Appellant, ) Appeal from the Circuit Court of
 ) Franklin County
 vs. )
 ) Honorable Isidore I. Lamke
 JEFFREY FRIEDMAN, ET AL., )
 )
 Respondent. ) Filed: March 30, 2021

 Sally Bacon (“Bacon”) appeals from the judgment of the Circuit Court of Franklin

County, which granted the motion for summary judgment filed by Jeffrey Friedman

(“Friedman”), Monica Friedman, Steven Kuess, and Theresa L. Keuss (collectively

“Respondents”). Specifically, the circuit court held that Bacon’s claims for breach of contract,

quantum meruit, and unjust enrichment arising from the sale of her privately-held archery

business to Respondents were barred by the five-year statute of limitations under § 516.120(1).1

In her sole point on appeal, Bacon argues that the circuit court erred in granting Respondents’

motion for summary judgment because there is a genuine dispute regarding: (1) the existence of

the alleged oral agreement to sell the archery business to Respondents; and (2) the amount of the

monthly payments allegedly required thereunder. Bacon further argues that her claims are not

1
 All statutory references are to Mo. Rev. Stat. Cum. Supp. 2014.
barred by the five-year statute of limitations because the parties’ underlying oral agreement was

an “installment contract,” and thus, Respondents’ alleged breach thereof is ongoing. We affirm.

 I. Factual and Procedural Background2

 Viewed in the light most favorable to Bacon, and giving Bacon the benefit of all

reasonable inferences therefrom, the record on appeal reveals the following facts:

 In the fall of 2004, Friedman approached Bacon about purchasing Summit Archery, the

retail archery business she and her husband, Dallas Bacon, 3 owned in Labadie, Missouri. Bacon

subsequently offered to sell Summit Archery to Friedman for a total of $350,000, which included

$150,000 for the land and building, and $200,000 for the store inventory and “everything else”

(the “Inventory”). According to Bacon, Friedman accepted the offer and thereafter sought

financing for the $350,000 total purchase price.4 Although Friedman was able to obtain a bank

loan for the $150,000 required to purchase the land and building, he was unable to obtain

financing for the $200,000 required to purchase the Inventory. Thus, Friedman asked Bacon if

she would be willing to “carry” the $200,000. Bacon admitted that, “like a dummy,” she agreed

to do so.

 Although the record is unclear exactly how the parties reached this understanding,

Friedman took over Summit Archery on January 1, 2005, and started making $1,000 monthly

payments to Bacon later that same month, which, other than the purchase price, appears to be the

only specific agreed-upon term with respect to the parties’ “informal agreement” for the sale and

2
 In their brief, Respondents also argued that Bacon’s appeal should be dismissed for numerous violations of Rule
84.04(c) and 74.04(c)(2). To the extent there were rule violations by Bacon, they do not substantially hinder our
review of the merits of this case, and thus, we deny Respondents’ motion.
3
 Dallas Bacon subsequently died, and thus, he was never a party to this action.
4
 In contrast, Friedman testified at his deposition that he understood the total purchase price to be $280,000 for
Summit Archery, but the record does not indicate whether he provided any further breakdown of the purchase price.
Regardless, as further explained in our analysis, see infra, III. Discussion (B), the resolution of the total purchase
price for Summit Archery is not necessary for our disposition of this case.

 2
purchase of Summit Archery. At this time, however, the parties had not fully consummated the

sale, and they never executed any type of formal asset purchase agreement with respect thereto.

 In March of 2005, Bacon had an attorney draft a promissory note with a principal amount

of $130,717, at 4.5% annual interest, payable in 180 payments of $1,000 per month,

commencing April 1, 2005, for a total amount due at maturity of $180,000 (the “March 2005

Note”). In March of 2005, each Respondent executed the March 2005 Note. However, Bacon

admitted that she only spoke with Friedman about the sale of Summit Archery, and that he was

the “point man” on behalf of Respondents for this transaction. Respondents thereafter continued

making the $1,000 monthly payments to Bacon as required under the March 2005 Note, which

has never been in default.

 At her deposition, Bacon was asked why the principal amount of the March 2005 Note

was only $130,717, when she alleges that the total purchase price for the Inventory was

$200,000, which left $69,283 unaccounted for by any writing. In response, Bacon testified that

this was simply how her lawyer “wanted to write it up” if the payments were to be $1,000 per

month.5 At another point during her deposition, however, Bacon testified that she asked her

lawyer to draft it up “for a thousand dollars a month,” and when he asked Bacon what she would

do about the “rest,” she said that she contemplated Friedman would start paying on that amount

“after hunting season,” and would continue paying until she got “paid off.” Bacon further

testified that her lawyer said, “I don’t think that’s a good idea,” but Bacon said that she believed

she could trust Friedman.

5
 We observe that this would be correct if the note was also required to be no more than 180 months. However, the
note could have been written with a principal amount of $200,000 for a period of 370 months at 4.5% annual
interest, and still achieved the desired monthly payment of $1,000. Furthermore, the record is unclear whether the
parties expressly discussed the required duration of the March 2005 Note and how the number of 180 monthly
payments was established. Regardless, the resolution of this issue is not necessary for our disposition of the case.

 3
 Bacon also testified that when she had Respondents execute the March 2005 Note, she

stated to Friedman, “you know what[,] it leaves $68,283,”6 but she further told him that he could

“pay at the end of the year as you get it, you know, until you get it paid off,” to which Friedman

allegedly agreed. However, Bacon admitted that there was no set time period in which Friedman

was to fully repay this amount, nor a set monthly amount he was required to pay. Rather, Bacon

simply testified that she just “wanted her money.” Bacon further admitted that there is no

“writing” confirming this understanding, including e-mails or any other memorializing

documents. Thus, Bacon admitted that the March 2005 Note was the only written document

executed by any Respondent that in any way memorialized the agreement to sell Summit

Archery to Respondents.

 Although Respondents consistently made the $1,000 monthly payments required under

the March 2005 Note, Bacon testified that she eventually became concerned that Respondents

were not going to repay the remaining $69,283 balance of the Inventory purchase price. Thus, in

October of 2006, Bacon testified that she approached Friedman about the fact that he still had not

made any payments on this amount, and she proposed that they “redo” the March 2005 Note.

 Although the record does not indicate how Friedman initially responded to this

proposition, Bacon had her attorney draw up a second promissory note to specify the terms for

the repayment of the full $200,000 purchase price for the Inventory, less the $1,000 monthly

payments that Friedman had already made to that point. Specifically, this second promissory

note had a principal amount of $180,000, at 4.5% interest, payable in 180 payments of $1,376.99

per month, commencing November 20, 2006, for a total amount due at maturity of $247,858.20

(the “October 2006 Note”). The October 2006 Note also released Respondents from the March

2005 Note. Bacon hand-delivered the October 2006 Note to Summit Archery sometime in

6
 It appears that Bacon misspoke, and meant to say $69,283.

 4
October of 2006, but she did not speak with Friedman at this time. Bacon testified that she

called Friedman a short time later to discuss the October 2006 Note, and he explicitly told her

that he refused to sign it. Friedman even told Bacon that he ripped it up and threw it in the trash

can. It is undisputed that none of the Respondents ever executed the October 2006 Note.

 Bacon admits that prior to commencing this lawsuit, she did not further demand

repayment of the outstanding $69,283 from Friedman after the October 2006 interaction. Bacon

commenced this lawsuit on August 8, 2014, and testified that she waited so long to do so because

her husband had been very sick in the period after she delivered the October 2006 Note to

Friedman. Bacon thereafter filed her first amended petition in this matter (the “Petition”), which

asserts claims for breach of contract, quantum meruit, and unjust enrichment with respect to the

outstanding $69,283 she is seeking from Respondents. However, Bacon’s core allegations in the

Petition differ notably from those she made during her deposition.

 In her Petition, Bacon’s primary theory is that in March of 2005, Bacon and her husband

entered into an agreement with Respondents for the sale of Summit Archery, but the agreed-upon

price was only $130,717 (not $200,000), payable in monthly installments of $1,000. Bacon

alleges this agreement was memorialized in the March 2005 Note, which was referenced and

attached to the Petition as an exhibit.7 Next, the Petition alleges that subsequent to executing the

March 2005 Note, “the parties discovered and agreed that certain inventory of the business had

not been included in the purchase price of the March agreement.” However, these allegations are

notably different from Bacon’s deposition testimony, which was that the agreed-upon price for

the Inventory was always $200,000, but the principal amount of the March 2005 Note was only

$130,717 because that is how Bacon’s attorney wanted to draft it for $1,000 monthly payments.

7
 We observe that, unlike Bacon’s deposition testimony with respect to the sale of Summit Archery, the Petition
makes no mention of a separate amount payable for the sale of the land and building (i.e., $150,000).

 5
 With respect to the newly discovered inventory, the Petition further alleges that Bacon

and Respondents “entered into an agreement providing for an additional monthly payment of

$376.99 for 180 months from the date of the agreement for the purchase and use of the inventory

not included in the March agreement.”8 The Petition also alleges that Bacon and Respondents

“intended to memorialize this agreement in a revised agreement …, which was never executed.”

This allegation specifically references the October 2006 Note, which was also attached as an

exhibit to the Petition. In this regard, the Petition further alleges that Respondents have refused

to pay for the “additional inventory and have had the benefit of the inventory currently and for

the past eight years,” and that Respondents “have refused and continue to refuse to pay the

additional sum of $376.99 per month since the date of the agreement.” Finally, the Petition

alleges that Bacon “has been damaged in the amount of $376.99 per month since the agreement

and continues to be damaged each month since the date of the agreement, both on a monthly and

collective basis.”

 Respondents subsequently filed their motion for summary judgment, which argued that

all three claims in the Petition are time-barred under the applicable five-year statute of

limitations set out in § 516.120(1) because each claim accrued as early as March 2005, when

Respondents executed the March 2005 Note for only a portion of the purported $200,000

purchase price for the Inventory. Alternatively, Respondents argued that Bacon’s claims accrued

no later than October 2006, when Friedman refused to execute the October 2006 Note, which

Bacon had her attorney prepare because she admittedly became concerned that Friedman was not

going to repay the remaining $69,283 balance of the Inventory purchase price.

8
 To the extent this allegation is specifically referring to the March 2005 Note, we observe that the note itself does
not contain any type inventory list with respect to Summit Archery. In fact, the March 2005 Note itself does not
contain any reference to Summit Archery whatsoever.

 6
 Finding that Bacon commenced this lawsuit more than five years after her claims against

Respondents accrued, the circuit court held that Bacon’s claims were time-barred under

§ 516.120(1), and granted Respondents’ motion for summary judgment. This appeal follows.

 II. Standard of Review

 The Supreme Court of Missouri recently affirmed the standard of review for summary

judgment as follows in Green v. Fotoohighiam:

 The trial court makes its decision to grant summary judgment based on the
 pleadings, record submitted, and the law; therefore, this Court need not defer to
 the trial court’s determination and reviews the grant of summary judgment de
 novo. In reviewing the decision to grant summary judgment, this Court applies
 the same criteria as the trial court in determining whether summary judgment was
 proper. Summary judgment is only proper if the moving party establishes that
 there is no genuine issue as to the material facts and that the movant is entitled to
 judgment as a matter of law. The facts contained in affidavits or otherwise in
 support of a party’s motion are accepted as true unless contradicted by the non-
 moving party’s response to the summary judgment motion. Only genuine
 disputes as to material facts preclude summary judgment. A material fact in the
 context of summary judgment is one from which the right to judgment flows.
 ***
 The record below is reviewed in the light most favorable to the party against
 whom summary judgment was entered, and that party is entitled to the benefit of
 all reasonable inferences from the record. However, facts contained in affidavits
 or otherwise in support of the party’s motion are accepted as true unless
 contradicted by the non-moving party’s response to the summary judgment
 motion.

606 S.W.3d 113, 115-16 (Mo. banc 2020) (quoting Goerlitz v. City of Maryville, 333 S.W.3d

450, 452-53 (Mo. banc 2011)). “In addition, the non-movant must support denials with specific

references to discovery, exhibits, or affidavits demonstrating a genuine factual issue for trial.

Rule 74.04(c)(2), (c)(4). Facts not properly supported under Rule 74.04(c)(2) or (c)(4) are

deemed admitted.” Id. at 116 (quoting Cent. Trust & Inv. Co. v. Signalpost Asset Mgmt., LLC,

422 S.W.3d 312, 320 (Mo. banc 2014)).

 7
 III. Discussion

 This case presents a classic cautionary tale of two practical and age-old legal maxims: (1)

“Get it in writing;” and (2) “Don’t sit on your rights.” Unfortunately, Bacon did not heed either,

and thus, her claims against Respondents seeking $69,283 in connection with the sale of Summit

Archery were dismissed by the circuit court as time-barred. Because we affirm on the same

grounds, whatever merit those claims may have had, if timely filed, will never be known.

 In her sole point on appeal, Bacon argues that the circuit court erred in granting

Respondents’ motion for summary judgment because there is a genuine dispute regarding: (a) the

existence of the alleged oral agreement to sell Summit Archery to Respondents; and (b) the

amount of the monthly payments allegedly required thereunder. Bacon further argues that her

claims are not barred by the five-year statute of limitations because the parties’ underlying oral

agreement was an “installment contract,” and thus, Respondents’ alleged breach thereof is

ongoing.

 Each argument is discussed in turn below.

A. The disputed fact questions are not material to Respondents’ right to judgment as
 a matter of law on their statute of limitations defense.

 First, regarding Bacon’s argument that the circuit court erred in granting Respondents’

motion for summary judgment because there is a genuine dispute regarding: (a) the existence of

the alleged oral agreement to sell Summit Archery to Respondents; and (b) the amount of the

monthly payments allegedly required thereunder, this argument is without merit. While these

issues are indeed disputed, they are not material to Respondents’ statute of limitations defense.

 As for the existence of the alleged oral agreement to sell Summit Archery, the parties

appear to be in general agreement that some oral understanding exists. As discussed, Bacon

contends that the original agreement involved a total sale price of $350,000, with $150,000 for

 8
the land and building, and $200,000 for the Inventory. On the other hand, Respondents contend

that the total purchase price was just $280,000 (presumably with $150,000 for the land and

building, and $130,000 for the Inventory). Thus, there does not appear to be any dispute that

Respondents agreed to purchase Summit Archery in the fall of 2004, and further, there is no

dispute that Respondents paid the $150,000 amount for the land and building via a bank loan.

Accordingly, the parties only differ on the agreed-upon price of the Inventory—a difference of

$69,283.

 As for the amount of the monthly payments allegedly required under the parties’ oral

agreement, there is both clarity and uncertainty. The only admitted writing with respect to this

transaction—the March 2005 Note—clearly sets forth the repayment terms for the first $130,717

of the purchase price for the Inventory, as it calls for 180 payments of $1,000 per month, at 4.5%

interest, with a total amount due at maturity of $180,000. However, as for the additional $69,283

that Bacon claims is due under the $200,000 purchase price for the Inventory, the waters are far

murkier. As noted, at her deposition, Bacon fully admitted that there were no agreed-upon terms

for the repayment of this amount. Rather, Bacon testified that she simply understood Friedman

would start paying on this amount at the end of 2005 (after the fall hunting season) and would

thereafter make payments as he could until this amount was paid off. Of course, since

Respondents deny the existence of any agreement to pay this amount in the first place, they also

deny any repayment terms, including those in the October 2006 Note, which Respondents never

signed.

 Regardless of any disputes about the existence of an agreement for the $69,283 and/or

any repayments terms, we find that these disputes are not material to Respondents’ right to

 9
judgment as a matter of law regarding Respondents’ statute of limitations defense, as explained

below.

B. Each of Bacon’s three claims are time-barred under § 526.120.1.

 Having determined that the aforementioned disputes regarding the $69,283 are not

material to Respondents’ statute of limitations defense, we next turn to Bacon’s argument that

her claims are not time-barred as a matter of law because the underlying oral agreement for the

sale of Summit Archery was an “installment contract,” and thus, Respondents’ alleged breach is

ongoing.

 As discussed above, there is no dispute that the parties memorialized the existence of, and

the repayment terms for, the first $130,717 of the parties’ agreement with respect to the

Inventory via the March 2005 Note, which had clear repayment terms. Our review of the March

2005 Note reveals that it is indeed a classic “installment contract,” as contemplated by Bacon.9

However, there is also no dispute that, as of the date of her deposition (i.e., April 18, 2016), the

March 2005 Note had never been in default.10 Therefore, absent a subsequent breach thereof,

Bacon cannot sue on the March 2005 Note. Rather, Bacon’s sole request for relief in this case

arises from the parties’ purported oral agreement for the $69,283, which she maintains remains

completely unpaid.

 In response to Bacon’s three claims arising from the allegedly unpaid $69,283 (i.e.,

breach of contract, quantum meruit, and unjust enrichment), Respondents’ motion for summary

judgment argued that each claim is subject to the five-year statute of limitations in § 516.120(1)

and is time-barred because the claims accrued as early as March of 2005 when Respondents

9
 See, e.g., Sabine v. Leonard, 322 S.W.2d 831, 837-38 (Mo. banc 1959) (recognizing that, “[a] promissory note is a
written contract for the payment of money and a failure to pay any installment thereof when it becomes due would
be a breach of contract” (emphasis added)).
10
 Although a significant amount of time has passed since Bacon’s April 2016 deposition, the record does not reflect
that she ever attempted to further amend her Petition to allege a subsequent breach of the March 2005 Note.

 10
tendered the March 2005 Note for $130,717 in full satisfaction of the sale price for the Inventory.

Specifically, Respondents contend that if Bacon believed any additional amount was owed, their

tender of the March 2005 Note, and Bacon’s acceptance thereof, commenced the five-year

limitations period at that time. In the alternative, Respondent argued that each claim accrued no

later than October of 2006 when Bacon demanded that Respondents execute the October 2006

Note after becoming concerned that Respondents would not repay the $69,283, and Friedman

refused to execute the October 2006 Note, which was further reinforced by Friedman telling

Bacon that he had ripped it up and thrown it in the trash can. Respondents further argued that

because Bacon did not commence this lawsuit until August of 2014, well more than five years

after the October 2006 accrual, each claim is time-barred under § 516.120(1). The circuit court

agreed with Respondents and granted their motion, dismissing each of Bacon’s claims.

 On appeal, Bacon argues, as she did to the circuit court, that her claims are not time-

barred because the parties’ purported oral agreement with respect to the outstanding $69,283 was

actually an “installment contract,” and thus, Respondents’ breach thereof is ongoing. This

argument, however, forces us to reconcile the obvious conflict between her own deposition

testimony that there were no firm agreed-upon terms with respect to the repayment of the

$69,283 and Missouri case law defining an “installment contract.”

 In her brief to this Court, however, Bacon avoids any serious discussion of how the

parties’ purported oral agreement for the $69,283 constitutes an “installment contract” under

applicable Missouri law. Rather, Bacon simply posits that “for contracts which require repeated

performance such as installment contracts, the statute of limitations for all breaches runs with

that for the last breach,” and cites Reed v. Pope, 817 S.W.2d 503, 505 (Mo. App. W.D. 1991), in

support. Bacon also cites Sabine v. Leonard, 322 S.W.2d 831, 838 (Mo. banc 1959), for the

 11
general proposition that in suits involving a contract claim with “more than one item of damage,”

the cause of action is deemed to accrue when “the last item of damage is sustained … so that all

damages may be recovered, and full and complete relief obtained in one action.”11 While we do

not disagree with these general statements of Missouri law, Bacon has failed to explain how the

parties’ nebulous agreement with respect to the $69,283 actually constitutes an “installment

contract.”

 Under the foregoing authority upon which Bacon relies, in order to accept that the

parties’ purported agreement with respect to the repayment of the $69,283 was an “installment

contract” (for which the statute of limitations has not even started running, let alone finished

running), Bacon would have to answer one simple question: how will anyone know when her

last item of damage is sustained? Bacon’s challenge is indeed formidable, as she has already

admitted that there were no agreed-upon terms for the repayment of the $69,283, written or

otherwise. Rather, the most Bacon could say at her deposition about the repayment of this

amount was that she understood Friedman would start repayment at the end of 2005 (after the

fall hunting season), and would continue making payments, as he could, until the amount was

paid off. In her brief to this Court, Bacon further suggested that the October 2006 Note “is

evidence of the original 2004 agreement, per Appellant’s testimony.” However, Bacon fails to

identify what specific testimony supports this proposition. On the contrary, Bacon expressly

11
 Although not cited in her brief to this Court, we observe that Bacon previously cited Ryerson v. Hemar Ins. Corp.
of America, 200 S.W.3d 170 (Mo. App. E.D. 2006), in her response to Respondent’s motion for summary judgment
in support of her argument that the parties’ agreement with respect to the $69,283 was an “installment contract.”
Ryerson similarly recognizes that, “[w]e find the date that the statute of limitations commences to run on an
installment note is the date the last installment of the note is due.” Id. at 173 (citing Estell v. Estate of Iden, 714
S.W.2d 774, 777 (Mo. App. E.D. 1986)). However, we need not further address the impact of Ryerson on this case
because we do not accept Bacon’s position that this was an “installment agreement,” as further discussed herein
below.

 12
admitted at her deposition that Respondents never agreed to the terms of the October 2006 Note

nor ever signed it (see Pg. 78, lines 15–21).

 Regardless, if we accepted Bacon’s premise, she could theoretically allege a breach of

this agreement at any time ad infinitum, and Respondents would forever be subject to a claim for

breach of contract until it was fully paid. This, of course, would directly contradict the

fundamental purpose of statutes of limitation: “to prevent the assertion of stale claims.” Business

Men’s Assur. Co. of America v. Graham, 984 S.W.2d 501, 507 (Mo. banc 1999).12 We can

hardly think of a scenario with greater potential for the assertion of a “stale claim” than that

presented by this case, where the purported repayment terms for the disputed $69,283 could not

be more vague and uncertain. Moreover, even if an agreement such as this one had been

memorialized in a writing (which it was not), that would only arguably render it subject to the

ten-year statute of limitations under § 516.110(1) (which governs written contracts for the

payment of money), rather than the five-year statute of limitation under § 516.120(1) (which

governs all other contracts). However, even a writing would not cure the fatal flaw in this case

of potentially subjecting Respondents to a stale breach of contract claim in perpetuity until fully

repaid.

 Therefore, we decline to accept Bacon’s invitation to expand the law of “installment

contracts” to encompass the purported agreement in this case regarding the disputed $69,283.

Accordingly, we find and hold that: (a) Bacon’s oral breach of contract claim is subject to the

five-year statute of limitations of § 516.120(1); see E.J. Vitello Plumbing, Inc. v. Wayne M.

Roberts, Inc., 955 S.W.2d 222, 223 (Mo. App. E.D. 1997); and Zuvers v. Robertson, 906 S.W.2d

12
 Graham further noted that, “[i]t has been often pointed out that statutes of limitation rest upon reasons of sound
public policy in that they tend to promote the peace and welfare of society, safeguard against fraud and oppression
and compel the settlement of claims within a reasonable period after their origin and while the evidence remains
fresh in the memory of the witnesses.” 984 S.W.2d at 507 (quoting Baron v. Kurn, 164 S.W.2d 310, 317 (Mo.
1942)).

 13
892, 895-96 (Mo. App. W.D. 1995); (b) this claim accrued no later than October of 2006 when

Friedman told Bacon that he refused to sign the October 2006 Note and that he had ripped it up

and thrown it in the trash; and (c) since Bacon did not commence this action until August of

2014, well more than five years after accrual, her breach of contract claim is time barred under

§ 516.120(1). Thus, the trial court’s grant of summary judgment in favor of Respondents on this

claim was proper.13

 Having disposed of Bacon’s breach of contract claim, we now turn to her remaining

quantum meruit and unjust enrichment claims, which suffer a similar fate. Specifically, we find

that both claims are subject to the five-year statute of limitations in § 516.120(1) in accordance

with established Missouri law. See, e.g., Estate of Cates v. Brown, 973 S.W.2d 909, 913 (Mo.

App. W.D. 1998) (recognizing that “[§] 516.120 mandates a five-year limitation period on

actions brought under a theory of quantum meruit”); and Royal Forest Condo. Owners’s Ass’n v.

Kilgore, 416 S.W.3d 370, 373 (Mo. App. E.D. 2013) (recognizing that, “[a]n action for unjust

enrichment is based on an implied or quasi-contractual obligation,” and thus, “[s]uch actions are

subject to the five-year statute of limitations in [§] 516.120(1)”).

 Furthermore, given that Bacon’s quantum meruit and unjust enrichment claims arise out

of the disputed $69,283 for the alleged missing inventory, they also accrued no later than

October of 2006 for the same reasons the breach of contract claim did, and thus, both claims are

likewise time-barred under § 516.120(1). Accordingly, the trial court’s grant of summary

judgment in favor of Respondents on these two claims was also proper.

13
 We acknowledge that Respondents also argued that Bacon’s breach of contract claim should be dismissed under
the parol evidence rule because the March 2005 Note reduced the parties’ agreement with respect to the purchase
price of the Inventory to that writing alone, and cited numerous cases in support, including Hahn v. Hahn, 488
S.W.2d 203, 205 (Mo. App. 1972), which expressly recognized that, “[o]ne who admits the execution of a note will
not be permitted to show the existence of an oral agreement for the reason that when a contract has been reduced to
writing, the law will presume that it embodies the entire agreement of the parties.” However, because we dispose of
Bacon’s breach of contract claim on the basis of Respondents’ statute of limitations defense, we need not address the
applicability of the parol evidence rule to this case.

 14
 IV. Conclusion

 The circuit court did not err in entering summary judgment in favor of Respondents on

the basis of their statute of limitations defense under § 516.120(1) with respect to each of

Bacon’s three claims in this matter. The circuit court’s judgment is affirmed.

 _______________________________
 Kelly C. Broniec, Judge

Colleen Dolan, P.J. and
Robert M. Clayton III, J. concur.

 15